Samuel A. Welcome, J.
The issue of law involved in the three captioned summary proceedings is an interpretation of section 16 of the standard agreement entered into between Trump Village Management Inc., a corporation organized pursuant to the Limited-Profit Housing Companies Law of the State of New York, under article 12 of the Public Housing Law of the State of New York, more properly known as a Mitehell-Lama development, and the respondents herein, who for the purpose of this proceeding will be called co-operators. Section 16B of the standard agreement provides, so far as is pertinent to these proceedings, as follows: “The cooperator unconditionally acknowledges, accepts and agrees that the carrying charges provided for herein are predicated on the following * * * Subsection B. That no dogs or other animals shall be harbored or kept on the premises; and the cooperator further agrees that violation of any of the foregoing provisions shall be deemed to be a violation of a substantial obligation under this lease and the housing company, in addition to any other rights it may have under this agreement, shall have the right to charge and collect from the cooperator an additional ‘ carrying charge ’, an amount as may be determined and fixed in the sole and exclusive judgement of the housing company for each of such violations, for each month such violation continues.”
Petitioners have instituted this proceeding by way of a holdover action against the above-named respondents based upon their breach of the aforesaid occupancy agreements entered into between each individual tenant respondent with their respective landlord petitioner.
The petitioners terminated said agreements because of the alleged violation of the said section 16B of the standard form agreement.
The parties have agreed to try the issues of all the above-mentioned proceedings as a joint trial and have further agreed to accept the court’s decision in Trump Village Section 4, Inc. v. Cooper as a decision which will bind the other litigants. In the matter of Trump Village Section 4, Inc. v. Martin Cooper and Marcia Cooper the requirement of the State Division of Housing was that a certificate initially had to be obtained from the Commission of Housing permitting the commencement of dispossess proceedings. After proper notice a hearing was held *759 and the Commissioner issued a certificate indicating that, in his opinion, the tenant co-operator had violated a substantial obligation of their tenancy and were in breach of the occupancy agreement. A copy of the certificate issued by the New York State Division of Housing and Community Renewal has been attached to and made part of the petition in the Cooper matter (9 NYCRR 1727-5.3, see Decisions of Comr.).
Subsequently, the requirement for a certificate was negated in matters affecting canine animals (9 NYCRR 1727-5.3, see Decisions of Comr.). It is settled law in this Department that the harboring of a dog in a demised apartment in contravention of the terms and conditions of an occupancy agreement is a breach of a substantial obligation of said occupancy agreement, so as to warrant the eviction of a tenant shareholder. (Hilltop Vil. Co-op. No. 4 v. Goldstein, 43 Misc 2d 657.)
The Appellate Term, in reversing the lower court in Hilltop v. Goldstein (supra), held that a landlord has a right to terminate a lease by reason of the tenant’s violation of an occupancy agreement which prohibited harboring and maintaining a dog in an apartment occupied by a tenant and, accordingly directed judgment for the landlord, that the tenant be evicted. The rule enunciated in the Hilltop case was reaffirmed by the Appellate Division, Second Department, in a case involving a rule adopted by the board of a co-operative, prohibiting the harboring of dogs in an apartment. In the action to declare the rights of the parties in regard to the harboring of dogs, the court held in Lincoln Co-op. Apts. v. Zaifert (23 A D 2d 796) that, 1 ‘ In our opinion, the keeping of a dog by the defendant, who is an occupant-shareholder of the plaintiff corporation, in violation of the corporation’s lawfully adopted regulation, constituted a substantial breach of the defendant’s occupancy agreement ”.
, In the cases where the landlord has pursued its remedy by way of a declaratory judgment on the grounds that the rule prohibiting dogs is reasonable and within the jurisdiction of the board of directors, the courts have, on motion for summary judgment, sustained the position, granting motions for summary judgment in these actions. (See Brigham Park Co-op. Apts. Section No. 2 v. Krauss, 28 A D 2d 846, affd. 21 N Y 2d 941.)
It, therefore, appears, beyond peradventure, that the law is well settled in these types of cases, where, by agreement, entered into prior to moving into the subject premises, a tenant co-operator has agreed in advance that the violation of section 16B or a similar section, will, by its terms, be substantial, said *760 agreement takes it out of the question-of-f act realm to he decided by a tribunal. The purpose of written documents is to avoid the necessity of multitudinous lawsuits and to resolve the rights of the parties, as has been held in Pimpinello v. Swift & Co. (253 N. Y. 159) and in legion cases involving, for example, liquidated clauses, where the parties, in the absence of fraud, have agreed in advance as to the construction of a legal instrument, that construction will be given full force and effect by the courts.
It remains now to consider whether or not any exceptions to the established law can be gleaned by the respondents ’ position.
The respondents’ position, tersely stated, is that petitioners should not prevail in these lawsuits because of the following circumstances, to wit: The construction of section 1GB and the administration and enforcement of said section by petitioners have not been uniformly carried out. Furthermore, because petitioners have signed agreements with members of the Dog Owners Association, permitting those members to keep the dogs which they now have, under a special agreement which has been upheld by Mr. Justice Heller in the Supreme Court, Kings County, the respondents take the erroneous position that this special arrangement is, in effect, discriminatory.
The testimony has shown that all persons involved in this proceeding either had actual notice or constructive notice of the decision of the board of directors of petitioners to permit special agreements (the purpose of which was to phase out the existence of the animals now on the premises) and they did not avail themselves of said special agreements. The petitioners now state that, by law, they are no longer empowered to enter into these special agreements and only those persons who were involved in the proceeding before Mr. Justice Heller in the Supreme Court, Kings County, or those persons who subsequently joined the Dog Owners Association, but prior to the prohibition invoked by the New York State Division of Housing and Community Renewal, may avail themselves of the special agreement procedure.
The material provisions of a special agreement provided that the tenant would pay an additional $5 a month for the first year of the agreement, $4 for the second year and $3 for all subsequent years. Provided further that the tenant co-operators also agreed that when their dog died or was otherwise disposed of, the dog would not be replaced. The respondents have taken the position that they are now willing to pay such additional rent and have also agreed not to replace their dog after the dog is removed, by death or otherwise. However, the petitioner *761 states that it cannot now enter into a special agreement, as above set forth.
The fact that none of the respondents were served with process in the declaratory judgment that was instituted before Mr. Justice Heller of the Supreme Court, Kings County, loses its import for the reason that such special arrangement is no longer available to the respondents. The testimony tends to indicate further that they knew or should have known about the proceedings before Mr. Justice Heller, however, the court does not necessarily find that as a fact, nor does it feel that that is germane to the issues of this proceeding.
The court finds that the clause prohibiting the harboring of dogs is a reasonable clause and is entitled to enforcement, especially in light of the fact that the occupancy agreement states that it is a substantial violation. The court also finds that there has been no discrimination in the enforcement of this provision. However, this court takes issue with the ruling of the New York State Division of Housing and Community Renewal that these special agreements can no longer be entertained by the Trump Village complex. If these respondents now see the light and are willing to enter into special agreements with the petitioners, they should be permitted to do so. This court, hov over, has no authority to overrule the New York State Division of Housing and Community Renewal.
Parenthetically, the court, being itself a dog lover, takes the position thsi this situation cries for legislative enactments and that the New York City Council or the New York State Legislature should enact legislation to permit the keeping of dogs, especially in the light of the crime wave within the City of New York. However, this is beyond the province of the court at this time and the court must rule upon the issues of the proceeding before it and does not have the temerity to enter into the legislative arena. The court also distinguishes the fact situations in the case at bar with the Valentine Gardens Co-op. v. Oberman (237 N. Y. S. 2d 535) where the court there held that although the violation of the restriction against harboring an animal in an apartment will be enjoined, it is not deemed a breach of a substantial obligation of the tenancy to warrant an eviction. In that case the clause which is now to be interpreted in the case at bar was different and did not provide for the agreement that the breach of the prohibition against harboring animals was to be, by arrangement, a substantial violation of the terms of the tenancy.
Whereas there have been contrary holdings in lower courts in the First Department, the law, as has been clearly enunciated, *762 in the Second Department is well settled and controls this court. This court, with great pain and reluctance, is constrained to rule that final judgments shall enter and do hereby enter in favor of the petitioners for possession of the subject premises. With warrant of eviction stayed for six months from the date hereof, provided that the tenants respondents do not dispose of the animals in question on or before five months from the date hereof.