Bernard Klieger, J.
These holdover proceedings were jointly tried and were brought by owners and managers of nonprofit co-operatives to enforce clauses in occupancy agreements which provide that no dogs or other animals shall be harbored or kept on the premises by tenant-co-operators.
The standard co-operator’s agreement, signed by each of the respondents, states that such a ‘ ‘ violation * * * shall be deemed to be a violation of a substantial obligation under this lease ’ ’.
The law appears to be settled in this, the Second Judicial Department, that the keeping of a dog in violation of such a clause in a lease constitutes a breach of sufficient dimension to be characterized as ‘1 substantial ’ ’ and to support eviction. (Hilltop Vil. Co-op. v. Goldstein, 43 Misc 2d 657, affd. 23 A D 2d 722; Trump Vil. Sec. 4, Inc. v. Cooper, 61 Misc 2d 757.)
Respondent Bothstein in this case first moved into his apartment in July, 1964. He has three children, daughters ages 6, 8 and 11, respectively. The eight-year-old daughter was born without eyes and he found it best to place her elsewhere because of the effect of her disability upon her two sisters. Bothstein’s eleven-year-old daughter had a heart condition and an emotional upset. He first purchased a parakeet to help the child, but the youngest daughter developed an asthmatic reaction to the parakeet. Bothstein learned that a dog would not affect his youngest daughter adversely, so he bought and now harbors the 18-inch toy poodle which looms so large.
Respondent Patterson moved into his apartment in February, 1964 and all of the time has had a Pulley Hungarian poodle miniature, about 15 inches in length and 13 pounds in weight.
At both premises there was an agreement entered into by petitioners with members of a Dog Owners Association, which stemmed from the settlement of a lawsuit to enforce similar clauses against harboring animals. The purpose of the agreements was to remove dogs from the premises by a process of *744 attrition. The owners were permitted, for a fee, to retain the dogs until they died or were otherwise disposed of; the dogs were not to be replaced.
All dog owners who desired to retain their pets were required to sign the agreement and pay the fee. Then the New York State Division of Housing and 'Community Renewal; which has jurisdiction in the matter, .prohibited additional agreements with dog owners after November, 1968.
The petitioners claim that all co-operators were given notice of the special agreement, an opportunity to sign up and the right to keep their dogs by paying the fees. Equally, petitioners claim that all tenants were given notice of the cut-off date decreed by the Division of Housing and Community Renewal. This notice was given by flyers or telephone calls.
It is clear that if the respondents had signed the special agreements prior to the cut-off date, each would have been entitled to keep his pet until it died, despite the covenants in the occupancy agreements. All other co-operators who signed the agreements are permitted to phase out their pets’ existence.
Courts look to the merits and do not exalt form above substance. (Washer v. Seager, 272 App. Div. 297, affd. 297 N. Y. 918.)
Were the case before the court on the naked fact of the harboring of the animals, this court would be constrained by the rulings in this Department to find that respondents had violated substantial obligations of their occupancy agreement. But, as Judge Fuld said in Matter of Park East Land Corp. v. Finkelstein, 299 N. Y. 70, 74: “‘Substantial’ is a word of general reference which takes on color and precision from its total context. Having little if any meaning when considered in abstract or in vacuum, it must be defined with reference to the particular legal and factual state in which it occurs. ’ ’
Petitioners, by permitting dog owners to keep their pets, under the circumstances indicated, when they signed the special agreements, have demonstrated that the clause against harboring animals is not considered by petitioners to be a substantial obligation of the occupancy agreements with respect to those co-operators who acquired a dog prior to November, 1968, until that dog’s death or other disposition by its owner. Both respondents fall into this category. Petitions dismissed.