Irving Younger, J.
Dogs have lived with human beings, to the benefit of both species, for ten millennia. The discontents of modern life, unfortunately, have led in recent years to various fallings out. Three examples come to mind. (1) Many humans insist that dogs forsake the manners of civilization and revert to their lupine state in order better to protect those humans from other humans who have themselves reverted to some original condition of barbarity. Dogs doubtless resent this. (2) Large numbers of dogs have fallen into the habit of attending to their needs on the city’s public ways. Most humans resent this. (3) Certain humans who own property occupied jointly by other humans and by dogs have demanded that the humans evict the dogs on pain of being evicted themselves. This is a case of the third kind.
Frank Osnowicz (respondent tenant here) is a professional puppeteer addressed by all who know him as “ Mr. Oz.” In December, 1966, he rented an apartment in a building at 258 East 78th Street, New York City, of which petitioner here is the landlord. Mr. Oz’ lease expired on December 31, 1969, when it was succeeded by a second lease running from January 1, 1969, to December 31,1971. On May 23,1970, Mr. Oz acquired a dog— a small creature of indeterminate parentage named Fred. In July, 1970, the landlord formally demanded that Mr. Oz either get rid of Fred or seek quarters elsewhere. Mr. Oz did neither. In due course thereafter the landlord declared the lease terminated and commenced this holdover proceeding for a judgment of eviction against Mr. Oz.
The case was tried before me without a jury. It appears that the facts bearing upon the rights and obligations of the landlord and Mr. Oz to one another are essentially undisputed, and those facts are all that concern me. My own or anyone else’s feelings about dogs in general or Fred in particular are beside the point. The issue here is technical in nature, and I have no choice but to decide it in precisely that way.
The landlord proceeds under subdivision 1 of section 711 of the Beal Property Actions and Proceedings Law, alleging that *929 Mr. Oz’ lease has expired and that he has improperly continued in possession. Since Mr. Oz’ lease on its face will not expire until December 31,1971, it is the landlord’s burden to prove that the earlier declaration of termination of Mr. Oz’ tenancy was lawful. Recognizing this, the landlord points to the clause of the lease forbidding a tenant to keep animals, to the admitted fact that Fred is living with Mr. Oz, and to the New York City Rent, Eviction and Rehabilitation Regulations, which are applicable to this building and which provide, in section 52, that a landlord may evict a tenant before the stated expiration of the term of the tenant’s lease if the tenant violates a “ substantial obligation ” of the tenancy. (See Moss v. Hirshtritt, 60 Misc 2d 402 [Civ. Ct., N. Y. County, 1969].)
Because there is no provision of statute or regulation expressly dealing with the right of tenants to keep dogs, the source of Mr. Oz’ obligation not to do so is the lease. The question which I must decide — since the terms of the lease and the fact that Fred has come to live with Mr. Oz are not in dispute — is whether the lease’s prohibition against the harboring of animals is a 1 ‘ substantial obligation ’ ’ of the tenancy. My research discloses that this question, despite a good deal óf reported litigation about dogs in apartments, has not until now been decided. If the prohibition against animals is a “ substantial obligation ’ ’ of the tenancy, I perforce conclude that Mr. Oz has violated it and grant judgment in favor of the landlord. If it is not, I perforce conclude that Mr. Oz’ violation of it does not fall within the reach of section 52 of the regulations and grant judgment in favor of Mr. Oz.
The evidence is as follows:
(1) The lease provides, in the last of 17 “ Rules and Regulations ’ ’ printed as an appendix to the 28 paragraphs of the lease itself, that “ no animals of any kind shall be kept or harbored in the demised premises ’ ’. Paragraph 9 of the lease states that ‘ ‘ tenant * * * shall observe faithfully and comply strictly with the Rules and Regulations set forth on the back of this lease ’ ’. Paragraph 16 of the lease states that ‘ ‘ if tenant shall make default in fulfilling any of the covenants of this lease * * * or if. landlord * * * shall deem objectionable or improper any conduct on the part of tenant ’ ’ the landlord may [proceed, as the landlord has done in this case, to declare the tenancy terminated. Nowhere, however, does the lease say that the prohibition against animals is a substantial obligation of the tenancy.
*930 (2) Rule 17, the key provision here, constitutes no more than one two-hundredth of the lease in terms of length, and is in no way underlined, emphasized, or set off from, the hundreds of other covenants and promises contained in the lease.
(3) When Mr. Oz signed the lease, the landlord was represented by Mrs. Hackett, the superintendent. She did not (nor did anyone else) direct Mr. Oz’ attention to rule 17.
(4) Mrs. Hackett herself resides in the building, and, from approximately 1954 to November, 1969, kept a dog in her apartment.
(5) Mr. Oz signed his first lease in Mrs. Hackett’s apartment. Mrs. Hackett’s dog was present and visible to Mr. Oz on that occasion. Mrs. Hackett made no comment about her dog or about the lease’s prohibition against animals. .
(6) Tenants other than Mr. Oz have kept animals in their apartments over the last four years. At a minimum, there were two dogs (including Mrs. Hackett’s) and four cats.
(7) The landlord did not demand that Mr. Oz get rid of Fred as soon as Fred moved into Mr. Oz’ apartment. The first such demand, an informal one, was made some four or five weeks later, and then only when a tenant complained.
(8) Apart from that tenant, no tenant in this building objects to Fred’s presence.
(9) Fred has not made a nuisance of himself.
As the evidence before me shows, this is not a ease like East River Housing Corp. v. Matonis (27 N Y 2d 931 [1970], affg. 34 A D 2d 937 [1st Dept.]). There, the landlord won an injunction against the harboring of a dog, but the tenancy was not terminated, as the landlord here has sought to do. There, moreover, the lease stated that violation of the prohibition against animals ‘ ‘ is to be considered a violation of a substantial obligation of occupancy.” Here, the lease says no such thing, leaving the issue open for determination as may be appropriate.
Turning now to that determination, I hold that as a matter of law the prohibition against animals is not a substantial obligation of this lease and, alternatively, that as a matter of fact the parties to this lease did not intend the prohibition against animals to be a substantial obligation of the tenancy. Indeed, there is not a jot of evidence even to suggest that, at the inception of Mr. Oz’ occupancy, the landlord either believed or acted as if it believed the prohibition against animals to be an important part of the lease.
It follows that what Mr. Oz has done by taking in Fred is to violate an insubstantial obligation of his tenancy. (Whether the landlord may recover damages or obtain an injunction against *931 him are issues not before me, and of course I express no view with respect to them.) What Mr. Oz has not done is to violate a substantial obligation of his tenancy. That being so, the landlord’s purported termination of Mr. Oz’ lease under section 52 of the regulations is without effect. The landlord’s petition for a' judgment of eviction against Mr. Oz must, therefore, be dismissed. It is.