Harry W. Davis, J.
Landlord brings three holdover proceedings against this tenant and two others in the same premises. The issues are identical in the three proceedings and are submitted to me on an agreed statement of facts. The decision in this one will, therefore, be applicable to the other two as well.
The tenant in each.instance has installed his own lock on the entrance door premises. The landlord makes no objection to this installation as indeed he cannot in view of section 51-c of the Multiple Dwelling Law (added by L. 1968, ch. 806, eft. June 16,1968) but he insists that each tenant must deliver over a key for such lock to the landlord. This has been refused. There is no showing that the key was required for any particular purpose and I must assume that the landlord seeks possession of the keys merely in anticipation of its eventual need.
*735 Each tenant is a statutory tenant in possession of the respective premises under expired leases. Bule 11 of the rules and regulations of each lease provides as follows: “ The landlord may .retain a pass key for the premises. No tenant shall # * * install a new lock * * * on any door of the demised premises without the written consent of the Landlord # * *. In case such consent is given the Tenant shall provide the Landlord with an additional key for the use of the Landlord pursuant to the Landlord’s right of access to the demised premises.”
Article 9 of the lease requires each tenant to “observe and comply strictly with the Bules and Begulations on the back of this lease ”.
Article 14 of the lease reserves to the landlord the right to “ enter the demised premises during reasonable hours to examine the premises, to show them to prospective purchasers and lessees ”, to make repairs and for other purposes as set forth therein.
Only those portions of the lease which are claimed by the parties to be pertinent have been submitted to the court.
Section 51-c of the Multiple Dwelling Law is captioned:
‘1 Bights of tenants to install and maintain locks in certain entrance doors”, and the section itself provides in part: ‘ ‘ Every tenant of a multiple dwelling * * * occupied by him * * * shall have the right to install and maintain * * * a lock, separate and apart from any lock installed and maintained by the owner * # * provided that a duplicate key to such lock shall be supplied to the landlord * * * upon his request”.
It would seem that this legislative enactment vitiated the lease provisions requiring prior consent from the landlord for the installation of an additional lock by the tenant. No one now living in this city would seriously argue against the need for or urgency of this right. Indeed not even the landlord contends that the tenant may not install his own lock. The landlord goes further, however, by insisting that this section makes it mandatory upon the tenant to give the landlord a key for such lock which is obviously added to the door as additional security. Landlord also urges that he is in any case entitled to a key by reason of the rules and regulations of the lease.
It will be noted that the language of the statute regarding the key is different from that contained in the rules and regulations. The former requires that a duplicate key be supplied while the latter requires the tenant to provide an additional key for the landlord. There is no doubt that the statute is a statement of *736 public policy (Blauvelt v. Village of Nyack, 141 Misc. 730) which must take precedence over the prescribed rules and regulations. A law enacted for the safety of the public must be so construed as to secure to the public the benefit of full enforcement (Public Serv. Comm. v. Booth, 170 App. Div. 590). Moreover there is no penalty provided in the statute in the event of a failure to supply the key.
McKinney’s Consolidated Laws of N. Y., Book 1, Statutes (§ 171) states: “ Whether a given provision in a statute is mandatory or directory is to be determined primarily from the legislative intent gathered from the entire act and the surrounding ciremnstances, keeping in mind the public policy to be promoted and the results that would follow one or the other conclusion. In this regard, however, it is said that the legislative intent does not depend upon the language in which the intent is clothed, and the fact that a statute is framed in mandatory words such as ‘ shall ’ or 1 must ’, is of slight, if any, importance on the question whether the act is mandatory or directory.”
Section 177 states: ‘ ‘ Whether a given provision of a statement is mandatory or directory cannot be made to depend on form alone; it goes to the substance and is to be determined by the legislative intent, not by the language in which that intent is clothed. So, in effectuating legislative intent, mandatory words have been interpreted in a merely permissive sense and vice versa.”
The question therefore is what did the Legislature intend by this enactment?
Webster’s Unabridged New International Dictionary (2d ed.) defines ‘ ‘ Supply ’ ’ as follows: “To provide that which is required * * * to fill the needs of”. The word “give” would have been a much simpler word to coincide with the landlord’s interpretation since its meaning is defined as: “To bestow ” or to “ yield possession ”.
One might argue that this is merely an exercise in semantics since the ordinary usual meaning of the word “ supply ” should be applied. The language of a statute is generally construed according to its natural and most obvious sense without resorting to an artificial or forced construction (Smith v. People, 47 N. Y. 330), and statutory language is to be read in accordance with its ordinary and accepted meaning (Bright Homes v. Wright, 8 N Y 2d 157).
It would seem to me that the clear intendment of the statute was for the tenant to make the key available for the landlord if, as and when needed. If the tenant is not able to do this then *737 possession of the key should be turned over to the landlord. If on the other hand the tenant is available in all emergency situations and at all other reasonable times for the purposes prescribed in article 14 of the lease then the tenant need not part with possession.
Even the language the landlord opted for in his own lease does not require the tenant to part with possession. “ Provide ” is defined as “ To supply for use; afford” or “ To equip in preparation ”.
There is no need therefore in my view for the tenant to part with possession since there .can be sufficient compliance if the key is merely available to the landlord under all the required conditions.
Even if I were to hold that the failure to supply the key constituted a breach of the lease I would not consider it such a violation of a substantial obligation of the tenancy so as to warrant an eviction (Abbett Realty Corp. v. Osnowicz, 65 Misc 2d 927).
Petition dismissed.