Nat H. Hentel, J.
In this 11 hold-over ’ ’ proceeding, landlord attempts to terminate tenants ’ long, continuing leasehold dated from March 26, 1963, by a “ Five-Day Notice ” dated May 18, 1972. The notice merely cites, as the reason, “ for violation of a substantial obligation of your tenancy.” The landlord’s notice of petition does not .spell out the reason but advises the tenants to “establish any defense that you may have to the allegations of the petition.” The petition defines the tenants’ alleged violation of a “ substantial obligation ” under the lease as “ said tenants have'been harboring a dog in said apartment.”
The tenants claim that when they first moved into Apartment A, 194-30A 65th Crescent of the Fresh Meadows development of the landlord, there were no restrictions with respect to tenants ’ keeping dogs in their apartment; and that they took occupancy in March, 1963, with their miniature poodle then four years old, with the full knowledge and approval of the landlord. These facts are not disputed.
Several months after taking occupancy, it appears that all tenants who had dogs were asked to register them with the management office, which the tenants did. Later, when their first lease expired, a new lease, dated January 5, 1965, at an increased rental, was entered into for the period January 23, 1965 to March 31,1968. On the back of the new lease was printed the following legend: “For the mutual benefit of all tenants and the Management of Fresh Meadows and in order to provide a pleasant place to live and a development to be proud of, the New York Life Insurance Company has made effective the following RULES AND REGULATIONS FOR FRESH MEADOWS * * * 15. No dogs or other animals shall be kept in the leased premisesParagraph “ Twenty-Ninth ” of the lease contains tenants’ covenant “ not to keep any dog in the leased premises ”, and agreement that “ a violation of this restriction shall constitute a breach of a substantial obligation of this lease and grounds for termination of this lease in the manner provided in Clause Eighth hereof ” (which provides for the issuance of a five-day notice).
It should also be noted that paragraph1 £ Ninth ’ ’ of the renewal lease reads: “ The failure of the landlord to insist in one or more instances upon a strict performance of any of the covenants of this lease, or to exercise any option herein contained, shall not be construed as a waiver or relinquishment for the future of such covenant or option, but the same shall continue and remain in full force and effect. No waiver by the Landlord of any provision hereof shall be deemed to have been^ made unless *54 expressed in writing and signed by the Landlord. The receipt by the Landlord of rent, with knowledge of the breach of any of the provisions hereof, shall not be deemed a waiver of such breach.”
Subsequently, by a lease renewal agreement rider attached to the January 5,1965 lease, the term of occupancy was extended for the period April 1, 1968 to March 31, 1971, at a further increased rental. This rider enunciates in its paragraph (6) “As an especial inducement for the Landlord’s granting the renewal of the aforesaid Lease, Tenant represents that neither Tenant nor anyone residing in the leased premises owns a dog. Tenant agrees that neither Tenant nor anyone residing or visiting the leased premises shall keep or permit any dog to be kept in the leased premises at any time during the term of this Lease. It is agreed that a violation of this restriction shall constitute a breach of a substantial obligation of tMs Lease and grounds for termination of this Lease as provided therein. No other ani-' mals or household pets shall be kept in the leased premises except with the Landlord’s prior written consent, and subject to the conditions set forth in any such consent, except the dog registered by Tenant in 1963 and 1967 for which Landlord extends permission to keep until December 31,1968 subject to the conditions Nos. 1-6 of such registration.” (All emphasis supplied.)
Apparently, all the tenants who owned dogs — and respondents were not the only ones allowed to keep dogs in their apartments —were required to register them, and as time went on to reregister their animals periodically with the landlord’s management office. Thus, on December 7, 1967, the tenants signed a “ Dog Registration ” form furnished by the landlord which reads in part: “ We hereby request permission to reregister and to keep at our apartment in Fresh Meadows during the period of our present lease the following dog which is the same dog registered with you in 1963. name of dog: Scotch-on-the Rocks, breed: French poodle, sex : Male, age : 8 years, height : Approximately 11" * * * weight : About 10 lbs. As a condition of approval to the keeping of this dog, we agree * * * (there then follows six rules of conduct prescribed by the landlord for tenants and their dogs).” The form concludes with “ we understand that this permission may be revoked at any time by the landlord in its sole discretion.” The form also indicates that the management office issued Fresh Meadows numbered dog tags for tenants ’ dogs. After the place for tenants ’ signatures on this form appears this endorsement: ‘ ‘ Permission Granted fresh *55 meadows by Joseph E. Westfield, Resident Manager” (the petitioner’s agent).
Then, the tenants’ lease was renewed for the fourth time at an increased rental. The last renewal was forwarded to the tenants by letter dated January 12, 1971, for the period April 1,1971 through March 31, 1974. The landlord’s forwarding letter on that occasion reads in part: “As you know it has been our policy for some years to prohibit dogs at Fresh Meadows, and that in pursuance of this policy we have acted to bar new dogs from being brought into Fresh Meadows, and have not been extending prior authorisation of dogs. Accordingly, we are not extending the authorization of your dog beyond March 31,1971. It is hoped you will cooperate with us and that you will discontinue maintaining a dog in your apartment as soon as possible ”. {Note: The court holds this language to be of an equivocal and nonbinding nature insofar as tenants are concerned. The language expresses “ hope ” that tenants will comply, but does not mandate compliance. The language asks for compliance “ as soon as possible ” without spelling out the time limit when compliance must be had). ‘ ‘ Cases are legion holding that any uncertainty or ambiguity in lease drawn by lessor should be resolved in favor of lessee.” (Jefferson Assoc. v. Miller, 63 Misc 2d 1056, 1057).
“Under the lease which is offered herewith the continued maintenance of a dog is prohibited and violation will constitute the breach of a substantial lease obligation. To afford you a reasonable opportunity to make other arrangements for your dog, we will forbear in enforcing this lease provision until March 31,1972. However, should you continue to maintain your dog in your apartment beyond said date, it will be necessary to proceed against you in the enforcement of this provision.”
Prior to receiving the last new lease from the landlord, tenants signed a ‘1 Fresh Meadows Application for Lease Renewal Agreement ” dated January 6, 1971, whereby the occupants for the subject apartment were listed as including Mr. and Mrs. Dick and their eight-year-old daughter and five-year-old son. Paragraph “3” entitled “Pet Restrictions” reads: “As an especial inducement for the landlord granting the Lease Renewal Agreement as applied for, Tenants represent and agree that neither Tenant nor anyone who will reside in the leased premises owns a dog. Tenants agree that neither Tenant nor anyone residing or visiting the leased premises shall keep or permit any dog to be kept in the leased premises at any time during the term of the renewed Lease. It is agreed that a violation of this *56 restriction shall constitute a breach of a substantial obligation of the renewed lease and grounds for termination of the renewed lease as provided therein. No other animals or household pets shall be kept in the leased premises except with the landlord’s prior written consent, and subject to the conditions set forth in any such consent.” (Note: The court holds that this language is also equivocal and ambiguous in nature in that the italicized language provided for emphasis apparently only applies to “ other animals ” not already allowed the use of the premises with the landlord’s consent, registration, and continuing acquiescence. Such language and conduct upon the part of the landlord which appears to say one thing but in actuality does another — [Don’t Do As I Say. Do As I Do!] — certainly does not clearly spell out a warning to the tenants that this time landlord actually meant to bar all dogs from the premises.)
Paragraph ‘ ‘ Twenty-Eighth ’ ’ of this latest new lease contains substantially the same language as quoted from paragraph 3 “Pet Restrictions ” of the Fresh Meadows Application for Lease Renewal Agreement (supra). The rules printed on the back of the new lease have the same paragraph “ 15 ” as quoted from the earliest lease.
It is to be noted that the landlord makes no claim in this proceeding, nor has it offered any proof, that the tenants violated any of the rules (1-6) to be obeyed by tenant dog-owners; nor is it claimed that tenants permitted or committed a nuisance via their dog at anytime during the past nine years of their occupancy ; nor is it shown that any other tenants have complained about “ Scotch-on-the Rocks ”.
The issue to be decided is: Did tenants violate a “ Substantial obligation ” of their tenancy in keeping their pet poodle for the past nine years on the premises — a circumstance condoned, licensed and regulated by the landlord despite express provisions and landlord’s rules and regulations to the contrary?
In Knolls Coop. Section No. II v. Cashman (14 N Y 2d 579), the Court of Appeals affirmed a Bronx Supreme Court decision (N. Y. L. J., March 5, 1963, p. 17, cl. 3) which stated: “ Nor is it necessary for plaintiff to show that the animal in question is a nuisance. The rule [against housing a dog in tenant’s apartment] being reasonable and in the interest of cleanliness and safety, the defendants were obliged to conform to it without regard to the question of whether the possession of the animal constituted a nuisance. ’ ’ (emphasis added).
However, the reliance by landlords on the “ reasonable rule ” theory in pursuit of their desire to rid their premises of dogs *57 appears to be in question, since section 53 of the Code of the Real Estate Industry Stabilization Association of New York City, Inc., provides “ that a tenant may be evicted from his apartment only for a breach of a substantial obligation of his tenancy.” (see Jefferson Assoc. v. Miller, supra; compare Riverbay Corp. v. Klinghoffer, 34 A D 2d 630; East Riv. Housing Corp. v. Matonis, 34 A D 2d 937, affd. 27 N Y 2d 931; and Gouverneur Gardens Housing Corp. v. Clayton, N. Y. L. J., Jan. 19, 1970, p. 14, col. 1, for reasoning that restrictive lease covenants prohibiting dogs are reasonable and enforceable; see, also, Rasch, New York Landlord and Tenant [2d ed.], § 1063, pp. 504M505).
Under the ‘ ‘ substantial obligation ’ ’ theory, the landlord must prove not only that the tenant violated a prohibition against keeping a dog but also that the dog created a nuisance. (Parkside Development Co. v. McGee, 21 Misc 2d 277.)
The authors of “ Rent Stabilization and Control Laws of New York,” (1972), Messrs. Gallet, Glass and Minkowitz, conclude in their chapter (X) on “ Harboring Pets ” (p. Ill): “ In the face of landlord successes, particularly in the appellate courts, lower court judges, hesitant to force tenants to give up their pets, have awarded defendants decisions based on a strict interpretation of lease provisions and rules prohibiting animals [citing cases]. With the re-emergence of the Substantial Obligation rule in the Rent Stabilization Law and strict constructionist lower court decisions, the law in this field is still far from settled, and the evolutionary process promises to continue during the 1970’s.”
The state of decisional flux and conflict in this area is further reflected in and reported by Messrs. Eugene J. Morris and Robert D. Levin in their recent “ Weekly Realty Law Digest ” columns in the New York Law Journal (N. Y. L. J., Feb. 2, 1972, p. 5). Thus, in commenting upon Mutual Redevelopment Houses v. Balducci (37 A D 2d 943 [1st Dept.]) they draw attention to the fact that the courts in the First Judicial Department have “ generally been more inclined in favor of tenants, and have held that harboring a dog in a residential apartment does not, per se, constitute a breach of a substantial obligation of the tenancy [citing cases] ”. On the other hand, they say, the courts of the Second Judicial Department “ have been more landlord-oriented, and have generally found that the unauthorized keeping of a dog in an apartment constitutes grounds for eviction or, at least, justifies the granting of injunctive relief to a landlord [citing cases]. ’ ’ They comment further that the ‘ ‘ apparent disparity ” has been resolved by the holdings in Riverbay Corp. *58 v. Klinghoffer and East Riv. Housing Corp. v. Matonis (supra), to the effect that a dog prohibition clause without landlord’s consent is entitled to be enforced. (N. Y. L. J., Feb. 2, 1972, p. 5; emphasis added.)
Again, Messrs. Morris and Levin in their New York Law Journal column of June 28, 1972, commenting upon East Midtown Plaza Housing Co. v. Banbury (N. Y. L. J., June 14, 1972, p. 18, col. 8), said: “ In recent months we have reported a plethora of decisions on the issue of harboring dogs in violation of a prohibition against pets contained in a lease * * # we have noted, on more than one occasion, that the decisions on the subject, even those within a single judicial department, were inconsistent and contradictory.”
With these warnings of such eminent commentators upon the contemporary landlord-tenant scene concerning the law pertaining to “ man’s best friend ” dwelling with him in leased apartments in high population density New York City, let us see how this court can further catalyze the evolution of the law and settle the conflict in this 1972 case.
In the East Midtown Plaza Housing Co. v. Banbury case (supra), the lease contained (as it does in the instant case), language to the effect that the keeping of a dog in violation of the rules and regulations set forth in the occupancy agreement will constitute a ‘ ‘ material and substantial breach. ’ ’ While the court noted that ‘ ‘ the mere keeping of a dog in contravention of a lease provision is not a violation of a substantial obligation of the tenancy, so as to warrant forfeiture of the leasehold” (emphasis added), nevertheless, the court enforced the contract, and held the tenant subject to eviction inasmuch as the violation was made expressly a substantial breach by a writing signed by the parties and the prohibition was communicated clearly to the tenant.
Despite the judicial controversy over dogs as occupants of apartments with their masters, do not the facts of this case take it out of the strict constmction of contract rule held by Judge Sanders in the East Midtown Plaza case (supra) ? What has the landlord here communicated clearly and expressly to the tenant?
This court does not think a landlord can make the keeping of a dog a “ substantial obligation ” of lease violation merely by saying it is so expressly in writing signed by the parties and clearly communicated to the tenant. It is like saying by printed sign “ The management is not responsible for hats and coats not checked in this restaurant ’ ’; and then the management pro *59 vides hooks in public places within the restaurant upon which the patron can and is invited to hang his hat and coat. The actions of the parties, their conduct and habits, their clearly understood obligations and responsibilities clarified by long usage must stand for much in spelling out the intent of the parties and should be given the highest credence and weight. If the landlord in effect says, “ Don’t do as I say, but do as I do!”, then this is what should be enforced; and not the mere words written into a contract that is consistently honored by the breach rather than enforcement. Such a clause, in my opinion, does not create a “substantial obligation” under the lease merely because the landlord labels it as such. My suspicions are substantially aroused as to how substantial the “no dog” clause is in the landlord’s esteem where the landlord has consistently overlooked and turned away from its reserved rights to exclude dogs and dispossess tenants in violation thereof over a nine-year period.
By its acquiescence and consent to these tenants’ keeping their dog in their apartment for over nine years — a period covered by the initial lease and three subsequent renewals — has not the landlord vitiated its written prohibitions and rendered them unenforceable ?
By its equivocal conduct and written language on the one hand in prohibiting the maintenance of dogs as expressly set forth in its lease covenants, rules and regulations, and applications for lease renewals; and yet, on the other hand, granting written permission to these tenants to do violence to these written prohibitions, has not the landlord estopped itself from claiming its alleged rights under the lease ?
By its registering and reregistering the tenants’ dog over the years and issuing a Fresh Meadows dog identification tag as a pet permitted to be kept on the premises despite rules and lease provisions to the contrary, has not the landlord effectively waived these provisions and canceled them?
By allowing tenants and their infant children to grow up together as a family unit (and the court takes judicial notice that a dog can become a very real member of a family unit) over a nine-year period without imminent fear or threat that this relationship would be torn asunder other than by natural causes, has not the landlord ‘1 ruled itself out of the ball park ’ ’ in attempting to claim at this late date its long-neglected and reserved rights ?
What would the reasonable tenant be led to believe over the years by such landlord’s conduct with respect to his dog? I ven *60 ture to say that the tenant would answer each of the foregoing questions in the affirmative.
Over the years, these tenants were lulled into a quiescent and nonfearful state about the future of their dogs by the landlord’s very nonadherence to its prohibitory regulations. How could there be any anxiety on their part or any real notice to them that: their ‘ ‘ dog-days ’ ’ were numbered when, in fact, the- landlord recognized and sanctioned their dogs as members of the Fresh Meadows community? Finally, when the written language of the application for lease renewal and the newest of the lease renewals (supra), contained apparently much .stronger language prohibiting dogs, was there anything further involved which would warn the tenants that the landlord really meant it this time, and that his permissive conduct would terminate? Why would this year be different from any other year? The court feels that there was nothing new and startling in the last lease renewal process which would indicate other than ‘ ‘ business as usual ” to the tenants. See Judge Picabiello’s decision in South-bridge Towers v. Rovics (69 Misc 2d 333), where it was held (p. 337) that “ [landlord’s] conduct inhibits the invocation of the subject prohibition to effect a termination of tenancy ” and permits the respondents to keep their present dogs ‘ ‘ until they die or are otherwise destroyed.”
■ I am constrained to follow the same reasoning, especially in view of landlord’s long history of deviation from its prohibitory rules and active consent to the harboring of tenants’ dog over almost a decade. Further, landlord offered not the slightest proof that this dog was a nuisance, that he created a health hazard of any sort, or even that one other tenant or neighbor had complained about this dog in nine years. Under these circumstances, I cannot see how the tenants could take the landlord seriously about ending its consent to the keeping of registered and identified dogs under the present lease.
Even though the law in the Second Judicial Department seems to favor eviction if there is a keeping of a dog in violation of a specific lease clause which characterizes such conduct as “ substantial ” in nature, we must look to the facts of each individual case to determine whether it is actually considered “ substantial ” in nature by the conduct of the parties which reveals actual intent as opposed to written hyperbole. As Judge Klieger said in Trump Vil. Sec. 3 v. Rothstein (62 Misc 2d 742, 744): “ Courts look to the merits and, do not exalt form above substance. (Washer v. Seager, 272 App. Div. 297, affd. 297 N. Y. 918.) Were the case before the court on the naked fact of the *61 harboring of the animals, this court would be constrained by the rulings in this Department [2nd] to find that respondents had violated substantial obligations of their occupancy agreement. But, as Judge Fuld said in Matter of Park East Land Corp. v. Finkelstein, 299 N. Y. 70, 74: ‘ “ Substantial ” is a word of general reference which takes on color and precision from its total context. Having little if any meaning when considered in abstract or in vacuum, it must be defined with reference to the peculiar legal and factual state in which it occurs. ’ ” (emphasis added).
It has been pointed out by Judge Hammer in Jefferson Assoc. v. Miller (63 Misc 2d, at p. 1058), that section 53 of the Rent, Eviction and Rehabilitation Regulations calls upon the courts to determine whether a breach of a “ substantial obligation ” under a lease has occurred. ‘ ‘ The court is not obliged to accept the designation in the lease of a substantial obligation ’ ’ merely because the lease labels it thusly.
In Abbett Realty Corp. v. Osnowicz (65 Misc 2d 927), it was held that notwithstanding a prohibitory lease provision on dogs which is entitled to enforcement, such prohibition may be waived by the conduct of the landlord and tenant or by express consent.
Judge Greenfield held in Rubenstein v. Mayhew, (N. Y. L. J., Nov. 23, 1971, p. 2, cols. 2-3), that in the absence of proof that the dog in question was dangerous or a nuisance, or that a clear, legal right of the landlord was violated as spelled out in the lease which contained an express prohibition, the landlord’s conduct in permitting the harboring of a Great Dane in the apartment for 10 years with the consent of the landlord was am effective waiver of the restriction and was binding upon the landlord.
See Pollack v. Green Constr. Corp., (N. Y. L. J., Feb. 2, 1972, p. 19, col. 4), wherein Justice Pino ruled that “ Although there is a 1 no waiver ’ provision in the lease, it has been well established that a landlord may by his conduct waive any right he may have to insist that the premises be used only for the purposes specified in the lease: and that an oral toaiver is good even though a written consent is required and provided for.” (emphasis added). In this case the court found that the landlord’s consistent conduct over five and one-half years clearly demonstrated its intent to waive from the inception a written prohibition against pets.
So, in this case, “ reasonable rule ”, “ substantial obligation rule,” or “ strict contractual construction rule ” notwithstanding, landlord is deemed to have waived the right to invoke the ‘ ‘ substantial obligation ’ ’ violation of the lease rule by its con *62 sistent acts of consent and approval of “ Scotch-on-the Rocks’ ” presence on its premises over nine years regardless of any writing in the lease to the contrary. This court holds landlord’s rights under the circumstances herein to be unenforceable. There was nothing to indicate at the time of the last lep.se renewul that landlord really meant it this time other than language which had proved meaningless to dog-owning tenants before." They had heard the same tune and those lyrics before. There is nothing to show that eitherjthe landlord or the tenant, from the inception of this tenancy, believed, or intended, or acted as if (they) “ believed the prohibition against animals to be an important [or substantial] part of the lease.” (See, and compare, Abbett Realty Corp. v. Osnowicz, 65 Misc 2d, at p. 930, which held the landlord’s purported termination of lease ineffective.)
In today’s troubled world and times, the need to communicate and reach out and care for other human beings and other forms of comforting animal life (where we are threatened to the point of extinction because of human excess), should not be inhibited by stated but unmeant prohibitions. Instead, the courts should attempt to preserve decent and reasonable rules by which mankind and animals may live together in harmony, such as are set forth in the Fresh Meadows ‘ ‘ Dog Registration ’ ’ Form dated December 7, 1967 (supra), to which both the landlord and these tenants agreed and subscribed. None of these rules were shown to have been violated by the tenants or their dog.
It is the judgment of this court that the tenants may keep their dog and family friend of the past nine years, and théir present apartment, inasmuch as landlord’s petition is dismissed for the reasons stated. Judgment for the tenants accordingly.