OPINION OF THE COURT
Jeffry H. Gallet, J.
The landlord, in this holdover proceeding, seeks to terminate the tenancy of this rent stabilized tenant because the tenant is using his apartment for business, as well as residential, purposes, which the landlord deems to be a substantial violation of the tenancy.
FACTS
The facts are clear and, essentially, undisputed. The rent stabilized tenant occupies his apartment pursuant to a printed lease which provides, in part, “The Apartment must be used only as a private Apartment to live in and for no other reason.”
During his occupancy, the tenant installed a telex machine and posted the name of his company on his mailbox. The landlord also established that the tenant’s telephone bills ranged from $132 to $373 per month, an amount higher than that charged for normal residential usage. The landlord, who lives in the building, testified that he *252 had not observed unusually heavy pedestrian traffic to and from the apartment in question.
In sum, the tenant uses his apartment to do his paper work, to send and receive mail and telex messages and to make and receive telephone calls. The tenant did not dispute the landlord’s allegation that the business being conducted in the apartment was the tenant’s main source of income nor did the landlord dispute the tenant’s claim that the apartment was the tenant’s primary residence.
ISSUE
The question before the court is whether the tenant’s business use constitutes a violation of “a substantial obligation of his tenancy” sufficient to permit termination of his occupancy under subdivision (a) of section 53 of the Amended Code of the Rent Stabilization Association of New York City, Inc. (the Code).
STAY
The tenant moved for a stay of this proceeding until his complaint on the same issue is determined by the Conciliation and Appeals Board (CAB). The motion is denied.
The judicial function under the Rent Stabilization Law differs from that under the rent control law in cases of eviction based on a violation of a substantial obligation of the tenancy. Under the rent control law, such determinations were made, in the first instance, by the rent administrator, subject to review by the courts. (Matter of Park East Land Corp. v Finkelstein, 299 NY 70.) The section 53 of the Code authorizes the landlord to go directly to the court. (See CAB opns 11, 197, 2869 and 1812 in accord.)
LAW
The Rent Stabilization Law was based on a legislative finding that an emergency exists requiring government regulation of rents and occupancy. (Administrative Code of City of New York, § YY51-1.0.) Section 53 of the Code, promulgated pursuant to title YY of the Administrative Code, empowers the court to look beyond mere technical *253 violations of a tenant’s lease to determine if the violation is “substantial”. In doing so, the court is not bound by the wording of the lease. (Jefferson Assoc. v Miller, 63 Misc 2d 1056.) Rather, the court is obligated to define it with reference to a particular context. (Matter of Park East Land Corp. v Finkelstein, supra; New York Life Ins. Co. v Dick, 71 Misc 2d 52.)
Keeping in mind that forfeitures are not favored in such cases, we must determine whether or not the use and occupancy complained of materially affects the rights of the landlord. (Madison 52nd Corp. v Ogust, 49 Misc 2d 663, affd 52 Misc 2d 935; Vittorio Props. v Alprin, 67 Misc 2d 439.)
Clearly, the mere use of a primary residence for some commercial purpose is not in of itself a substantial violation of the tenancy. To so hold would mean that a tenant who received an occasional business telephone call at home would be subject to eviction. (Park Towers South Co. v A-Lalan Imports, 101 Misc 2d 507; Phillipse Towers v Ortega, 61 Misc 2d 539.) There must be a test based on the quantity and quality of the use.
TEST
A test based on only quantity must be rejected. A tenant who reads reports in his apartment for eight hours a day, seven days a week would not be in violation of a substantial obligation of his tenancy while a tenant holding large, noisy meetings for half that time might be. It is the quality of the use, as well as the quantity which must be evaluated.
To make that evaluation, we must pose three questions:
1. Does the use materially affect the character of the building?
2. Does the use materially damage or burden the landlord’s property?
3. Does the use materially disturb the building’s other tenants in the peaceful use of their apartments?
In this case there is no evidence upon which to answer affirmatively to any of these questions.
Accordingly, final judgment for the respondent.