OPINION OF THE COURT
Diane A. Lebedeff, J.
This holdover proceeding was commenced by the owner on the ground that the rent-stabilized tenant had refused to execute a renewal lease. At trial, a series of arguments were presented raising a variety of issues relating to oral rental agreements and renewals of such agreements in the rent stabilization system.
The facts were essentially uncontested. The tenant took occupancy of a rent-stabilized apartment in August of 1977. Two years later, a new purchaser took title to the building and extended to the tenant an offer of a renewal lease. Although there had been no lease between the tenant and the prior owner, the new owner’s managing agent sent the tenant a standard form apartment lease.
*740 The tenant selected a three-year renewal term and, noting certain limited changes on the lease, returned it, neglecting to advise the managing agent of the reasons for the changes. Without attempting to resolve between them the reasons for the dispute as to the form of the lease, there was a demand that the lease be signed without changes. Without a resolution on the terms of the lease, the tenant commenced paying a rent increase appropriate to a three-year renewal in January of 1980.
The arguments raised issues of the validity of oral rental agreements, the practice of renewal agreements confirmed by actions of the parties and not resolved to writing, and the right of an owner to evict a rent-stablized tenant who does not sign a written renewal lease.
I
The owner argued that oral rental agreements are not valid under the Rent Stabilization Law. Both the terms “rental agreement” and “lease” are contained in the law and regulations governing that system and both are subject to that system. (See Administrative Code of City of New York, § YY51-5.0, subd b; § YY51-6.0.1; Amended Code of Real Estate Industry Stabilization Association of New York City, Inc., § 10 [hereinafter Amended Code].)
Moreover, the owner’s awareness of the validity of such agreements is supported by the fact that an offer of a renewal lease was made here. Such an act-evidences the understanding that oral rental agreements are a part of the rent stabilization system, which is supported by common experience. The argument therefore has little force.
II
The owner’s argument that there cannot be a valid unwritten renewal agreement has no more force. The practice of recognizing such renewal agreements has repeatedly been confirmed by both the courts and the administrative body which enforces much of the Rent Stabilization Law. (See Pierre v Williams, 106 Misc 2d 81, Alfano, J.), for an extended discussion of the practice of “deemed” renewal leases and their recognition by the New York City *741 Conciliation and Appeals Board, as well as an example of enforcement of a “deemed” lease; see, also, Gold v Marmelstein [NYLJ, July 11, 1980, p 6, col 3] [App Term], involving the finding of a renewal lease based upon a stipulation.)
In this case, because it is clear that the tenant has accepted an offer of a renewal lease and selected a three-year term and paid the appropriate increase, there is every reason to find that a three-year renewal lease is in effect. There is a basis for holding that the facts here, subject to their interpretation pursuant to the Rent Stabilization Law, fully satisfy the requirements for leases or renewal leases. (See Real Property Law, § 232-c; Matter of O’Donnell, 240 NY 99,107-108; New York Rys. Corp. v Savoy Assoc., 239 App Div 504, 507.)
Finally, there is no evidence that the owner rejected that rent increase. In view of the above, the court holds that a valid renewal agreement may exist and, on these facts, that a renewal agreement exists in this case.
ill
The final argument raised is that a rent-stabilized tenant has an obligation to sign an actual written renewal lease. This argument has considerable substance.
The Amended Code, unlike the City Rent and Eviction Regulations which are applicable to the rent control system, does not specifically prohibit demand of execution of a renewal lease when there was no original written lease. (Cf. Amended Code, § 54, subd [c], with Rent and Eviction Regulations, § 52, subd e; see, also, E.G.A. Assoc. v Hashim, NYLJ, May 11, 1979, p 6, col 1, confirming that an owner may not demand that rent control tenants “ ‘renew something that never existed’ ”.)
This difference is significant given that the stabilization system, in its current form, is based upon lease records and not upon the registration of information. See the discussion regarding Recommendation No. 75 in the Report of the New York State Temporary Commission on Rental Housing (1980). Leases are the primary means of reconstructing rental histories. An owner is required to retain them and display them upon request. (Amended Code, § 42, subd [a], *742 pars [i], [ii].) Thus, leases are a vital part of the rent stabilization system.
Moreover, subdivision (c) of section 54 of the Amended Code grants owners only a limited right to insist upon execution of certain clauses. Reading it together with section 60 of the Amended Code, it is apparent that a simple extension agreement with clauses allowable under subdivision (c) of section 54 would avoid changing the terms and conditions of the tenancy while giving the owners that to which they are entitled. Such a course would also satisfy the requirement that tenants not be forced to examine new riders and, at the risk of eviction, determine whether they change the terms and conditions of the tenancy (Newport Apts. Co. v Collins, NYLJ, Feb. 6, 1979, p 13, col 6), as well as not incorporate into leases void or voidable provisions (see CAB Opn No. 11, p 699).
Such a renewal was not presented here. Nor is there evidence that the tenant refused to execute any clause upon which the owner could insist under subdivision (c) of section 54. Indeed, the tenant did sign the long form lease with a few alterations which, as the tenant credibly testified, arose from a desire to conform the lease to the rental agreement. The court finds that the tenant has not breached any duty under subdivision (c) of section 54.
Moreover, given the novelty of the issue, if the court had found a wrongful refusal, it might have exercised the power to direct that a subsequently executed renewal lease be retroactive. (Amended Code, § 13, subd [a], par [3].) That remedy would hold the owner harmless and yet be consonant with the principle that forfeitures are not favored in relation to rent regulated apartments, a concept most recently reiterated in Nissen v Wang (105 Misc 2d 251).
In conclusion, a case has not been made out here that the tenant wrongfully refused to execute a renewal lease and, on these facts, this claim also falls.
As to the issue of repairs, it has been stipulated that they will be undertaken by the owner.
Based upon the foregoing, the petition is dismissed.