OPINION OF THE COURT
David B. Saxe, J.
Where a landlord has accepted rent from a rent-stabilized tenant after the expiration of his lease, may the tenant nevertheless be evicted for failure to submit an executed renewal lease to the landlord within the time prescribed by section 60 of the Code of the Rent Stabilization Association of New York City, Inc. (Rent Stabilization Code)?
The essential facts, stipulated to by the parties, are as follows: The respondent is a rent-stabilized tenant of an apartment located at 119 East 83rd Street in Manhattan. The initial lease, which commenced September 1, 1979, was consecutively renewed for two one-yeár terms. On April 15, 1982, the landlord offered the tenant a further renewal agreement for a one-, two-, or three-year term and tendered a proper renewal lease. The tenant failed to return an executed copy of the lease within 60 days of receipt (the time specified under the Rent Stabilization Code) or even prior to the termination of his then current lease, which expired on August 31, 1982. In September of *213 1982, the tenant sent September rent in the sum of $438.25 (the rental reserved under the expired lease agreement) which the landlord accepted. However, when the tenant mailed the executed lease renewal agreement to the landlord, it was rejected along with the tenant’s tender of October rent. The landlord then instituted a summary eviction proceeding against the tenant based on his alleged failure to renew the lease within the time set by law.
It is the landlord’s contention that she is entitled to a judgment of possession in her favor because the respondent failed to accept the lease in a timely fashion. In support of her position, the landlord relies on principles of strict contract offer and acceptance and asks this court to conclude that no contract for renewed rights to possession ever resulted. (See 67 8th Ave. Assoc. v Hochstadt, NYLJ, Oct. 29, 1980, p 6, col 1 [App Term, 1st Dept].)
The tenant argues that despite a late submission of the renewal lease, he exercised his lease renewal rights properly. This conclusion follows, he argues, from the following facts: (1) that the landlord accepted rent from him after the expiration of the lease; (2) that the delay did not result from his bad faith; and (3) that the landlord has not changed her position to her detriment during the intervening time.
Under circumstances analogous to those presented here, a court will consider the equities of the situation and, where possible, will strive to avoid a forfeiture against the tenant. (Sy Jack Realty Co. v Pergament Syosset Corp., 27 NY2d 449.) The landlord contends that the tenant did not intend to maintain his status as a rent-stabilized tenant by failing to abide by the terms of the renewal option and is therefore not entitled to a renewal lease. In support of this position, the landlord points to the fact that the respondent’s payment of September rent was in the amount reserved under the expired lease rather than the amount set forth in the unexecuted renewal lease. (See Haley v Clayton, 106 Misc 2d 739.) Since the tenant paid the “old” rent, the landlord contends that the tenant did not intend to renew his lease. This argument is without merit. In fact, it would seem that the landlord’s acceptance of the tenant’s tender of rent for September, 1982 (at whatever rental *214 amount) is a strong indication of the tenant’s desire to continue his rent-stabilized tenancy. It appears then that the respondent’s failure to renew did not come about because he intended to terminate his occupancy. (Marsh v Barnes, NYLJ, March 18, 1982, p 7, col 3 [App Term, 1st Dept].)
The landlord would not be prejudiced as a result of a holding that the tenant’s tender of the renewal lease was proper. First, the landlord has not alleged any basis on which to conclude a detrimental change of position such as a reletting of the premises to a new tenant. If the landlord here was now able to rent the premises to a new tenant, she would not be entitled to a rent increase premised upon a change in occupancy. This type of formerly permitted increase, known as a “vacancy” increase was abolished effective October 1, 1982, by the Rent Guidelines Board Order No. 14. It thus follows that the legal rent that could be charged to an incoming tenant could not be any greater than the rent properly charged to the respondent. I hold therefore that the landlord has not suffered any prejudice. The respondent’s failure to submit the renewal lease within 60 days of receipt was not fatal to his rights of renewal. (See Gordon v Barash, 67 Misc 2d 764.)
Secondly, I hold that the landlord waived her right to insist upon compliance with the time provisions set forth in section 60 of the Rent Stabilization Code due to her acceptance of the tenant’s rent after the expiration of the lease. (21 NY Jur, Estoppel, Ratification, and Waiver, § 88, p 126.) It follows that the tenant’s failure to submit the renewal lease within 60 days of receipt does not constitute a basis for refusal by the landlord to renew and therefore for eviction under section 23 of the Rent Stabilization Code.
Section 60 states: “Section 60. Notices For Renewal Leases. Every owner shall notify the tenant in occupancy not more than 150 and not less than 120 days prior to the end of the tenant’s lease term, by mail, of such termination and offer to renew the lease at the stabilization rent permitted for such renewal lease and otherwise on the same conditions as the expiring lease, and shall give such tenant a period of 60 days to renew such lease and accept *215 the offer * * * Provided further that nothing herein shall shorten the 60 day period a tenant has in which to renew after notification by the owner of his options on renewal.”
The Rent Stabilization Code offers tenants a panoply of rights with regard to residential units. A landlord is free to expand these protections afforded by allowing tenants to enjoy greater rights than those reserved to them under the Rent Stabilization Code. In other words, the Rent Stabilization Code is intended only to set forth a minimum standard of tenant protection.
Section 60 provides that a tenant shall be entitled to a period of 60 days from receipt of the proposed renewal lease within which to exercise his option to renew. This, however, does not mean that a landlord cannot furnish the tenant with an expanded time period within which to renew. Although by the terms of section 60 an agreement by a tenant to shorten the time period for a lease renewal would be held to vacate public policy, an extension or waiver by the landlord of this time period would be permissible. That is the case here.
I find that the landlord waived her right to insist upon the 60-day provision prescribed by section 60. First, the landlord’s acceptance of rent subsequent to the expiration of the lease is inconsistent with an intention to evict the tenant under section 23 of the Rent Stabilization Code on account of his failure to submit an executed renewal lease within 60 days of receipt. In addition, a letter sent by an agent of the landlord to the tenant in late August, 1982 in which the tenant was offered valuable consideration for the surrender of his apartment (i.e., $5,000) is indicative of the landlord’s intent to waive sections 23 and 60.
The landlord’s position is clearly inconsistent. One cannot have it both ways. I hold that the petitioner’s rejection of the tenant’s submission of the renewal lease was improper and therefore an invalid basis upon which to evict the tenant. Judgment for the respondent.
Petition dismissed.