OPINION OF THE COURT
 

 Jasen, J.
 

 The issue presented on this appeal is whether a significant violation of a substantial obligation of a lease occurs when a tenant who agreed to use her apartment solely for residential purposes also uses the apartment as a counseling office where she conducts her entire professional psychotherapy practice.
 

 Respondent tenant, Dr. Barbara Lewis, a doctor in clinical psychology, rented an apartment in a rent-stabilized building located in New York City from petitioner landlord. The lease, which was entered into by both parties on June 16, 1969, provides,
 
 inter alia,
 
 that: “Tenant shall not use or occupy the apartment or allow the apartment to be used or occupied for any purpose other than as and for a private dwelling-place, nor by any party other than Tenant, the members of tenant’s immediate family as stated in the most recent Information Form Concerning Applicant and any children hereafter born to or adopted by Tenant. Landlord hereby advises Tenant that the character of the occupancy of the apartment and the use thereof, as in this case restricted, is a special consideration and inducement for the making of this lease by Landlord.”
 

 Despite the unambiguous use and occupancy restriction contained in the lease, tenant, as a professional psychotherapist began counseling patients in her apartment. Sometime after the landlord learned of this, it served tenant with a 10-day notice to cure, stating that “[i]t has come to your landlord’s attention that you are in violation of Article 2 of your lease, and of the terms and conditions of your lease in that you are using your apartment for purposes other than residential” purposes, to wit, for the professional practice of psychology * * * I wish to advise you that it will be necessary for you to desist from continuance of this illegal occupancy within ten (10) days from the receipt of this notice. Should you fail to comply with the terms of
 
 *435
 
 this notice within the time required, then it will be necessary to commence legal proceedings to terminate your lease and occupancy.” When tenant refused to comply with the notice, landlord served her with a notice terminating the tenancy.
 

 Shortly thereafter, tenant commenced a declaratory judgment action against the owner seeking a declaration that her use of the apartment was not a violation of a substantial obligation of her tenancy within the meaning of subdivision A of section 53 of the Code of the Rent Stabilization Association of New York City, Inc. (Rent Stabilization Code).
 

 On July 23, 1981, the parties entered into a stipulation discontinuing the declaratory judgment action and permitting the landlord to proceed with a holdover proceeding provided that, if landlord were awarded a final judgment of possession, tenant would be permitted to cure the default within 60 days thereafter by discontinuing the practice of psychotherapy in her apartment. It was further agreed that in the event landlord was successful at the holdover proceeding, tenant could remain in possession of the apartment during the pendency of an appeal, provided that she discontinue her practice of psychotherapy on the premises.
 

 Landlord commenced a summary holdover proceeding against tenant in the Civil Court of the City of New York. After trial, possession of the apartment was awarded to landlord. On appeal, the Appellate Term reversed, holding that “it was not demonstrated that tenant’s ‘business activities’ in her apartment were so substantial as to warrant termination of her twelve-year stabilized tenancy.” A sharply divided Appellate Division affirmed. Landlord’s appeal is before us pursuant to leave granted by the Appellate Division. We now reverse.
 

 The subject lease contained a restrictive covenant limiting the tenant’s use and occupancy of the apartment exclusively to residential purposes — “Tenant shall not use or occupy the apartment or allow the apartment to be used or occupied for any purpose other than as and for a private dwelling-place”. Tenant concedes that she used the apartment for other than residential purposes by conducting her entire psychotherapy practice there. She correctly argues,
 
 *436
 
 however, that subdivision A of section 53 of the Rent Stabilization Code prevents a landlord from evicting a tenant in a rent-stabilized apartment unless “[t]he tenant is violating a
 
 substantial
 
 obligation of [her] tenancy”. (Emphasis supplied.)
 
 [1]
 

 Thus, we turn our attention to the question whether tenant violated “a substantial obligation” of the lease. Tenant again concedes, as she must, that the lease provision limiting use and occupancy of the apartment to residential purposes is a substantial obligation of her tenancy. Indeed, by the express terms of the lease, the residential character and limited use of the apartment “is a special consideration and inducement for the making of this lease by Landlord”. Although we find that tenant has violated “a substantial obligation” of her tenancy, this does not end our inquiry, for the problems associated with the acute shortage of residential housing in New York City demand that tenants be afforded more protection than would be available under an unduly restrictive interpretation of subdivision A of section 53.
 

 We need not expound at length upon the crisis existing in the housing market in New York City. Suffice it to say, in 1969 the city council issued a declaration of emergency, concluding that “unless residential rents and evictions continue to be regulated and controlled, disruptive practices and abnormal conditions will produce serious threats to the public health, safety and general welfare”. (Administrative Code of City of New York, § YY51-1.0 [findings and declaration of emergency reaffirmed March 30,1982].)
 

 In view of the legislative recognition of the plight of residential tenants residing in New York City, we do not believe that subdivision A of section 53 of the Rent Stabili
 
 *437
 
 zation Code should be given a restrictive construction. Instead, in addition to requiring proof that a tenant violated a substantial obligation of the lease, we hold that a landlord must also demonstrate that the violation of such obligation was a significant one — i.e., not a technical or a
 
 de minimis
 
 violation.
 

 We note that the standard we adopt today was foreshadowed by this court 35 years ago. In
 
 Matter of Park East Land Corp. v Finkelstein
 
 (299 NY 70, 73), this court was called upon to decide the exact question presented on the instant appeal — whether a tenant violated “a substantial obligation of his tenancy”. While most of the court’s discussion focused on the substantiality of the obligation which was violated, Judge Fuld, writing for a unanimous court, imposed upon the landlord the additional requirement of establishing a “significant departure” from a substantial obligation of the tenancy.
 
 {Id.,
 
 pp 75-76.)
 

 Inasmuch as the housing crisis in New York City has not abated over the past 35 years (Administrative Code of City of New York, § YY51-1.0.1;
 
 8200 Realty Corp. v Lindsay,
 
 27 NY2d 124, 136), we see no reason to give a more restrictive construction to the current Rent Stabilization Code than was given to the New York City Eviction Law in 1949. Furthermore, we do not believe that the city council, in authorizing the adoption of the present Rent Stabilization Code, intended that
 
 de minimis
 
 violations of substantial lease obligations should serve as a basis for the eviction of tenants from their rent-stabilized homes. (Cf.
 
 Matter of Park East Land Corp. v Finkelstein, supra; 420 East 80th Co. v Chin,
 
 97 AD2d 390.) To hold otherwise would render meaningless the protections intended to be afforded by law to such persons, for it will be the rare case where there are no minor technical violations of a lease which under a strict interpretation of subdivision A of section 53 would allow landlords to evict their tenants. We note that even petitioner landlord does not urge that we read the Code so rigidly.
 

 In this case, we hold that by conducting her entire professional counseling practice in the apartment, tenant has significantly departed from a substantial obligation of her tenancy. The apartment complex in which tenant’s
 
 *438
 
 apartment is located consists of 2,521 units, all but one of which is leased exclusively for residential purposes.
 
 [2]
 
 Tenant, however, conducts a psychotherapy practice in her apartment and has constructed a fioor-to-ceiling partition to provide a separate area in her living room in which to counsel patients. Tenant concedes that she counsels approximately two to four patients each day or 15-22 patients per week at the apartment and that the apartment serves as her sole place of business. Tenant derives a substantial portion of her income from this practice. Certainly, the landlord upon signing the lease could reasonably expect that tenant would use the apartment for residential purposes and not conduct a full-time clinical psychology practice on the premises. This is especially so in light of the fact that tenant’s apartment is merely one of 2,520 such apartments in landlord’s residential housing complex. It cannot be seriously disputed that tenant’s use of the apartment as the sole situs of her psychotherapy practice is completely at odds with the character of the complex as a whole.
 
 [3]
 

 Consequently, tenant’s counseling practice cannot be characterized as a technical or
 
 de minimis
 
 violation of the restrictive covenant. The covenant was concededly a substantial obligation of the tenancy and tenant’s extensive professional use of the premises constitutes a significant violation of that obligation. As a result, possession of the apartment should be awarded to landlord subject only to the parties’ stipulation.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and possession of the subject premises be awarded to petitioner, subject to any stipulation entered into by the parties.
 

 Chief Judge Cooke and Judges Jones Wachtler, Meyer, Simons and Kaye concur.
 

 Order reversed, etc.
 

 [1]
 

 . Subdivision A of section 53 of the Rent Stabilization Code provides, in full, that:
 

 “SECTION 53. GROUNDS FOR EVICTION
 

 “Except where the tenant fails to pay the stabilization rent, an action or proceeding to recover possession of any dwelling unit shall be maintainable in a court of competent jurisdiction only upon one or more of the grounds specified in the Real Property Actions and Proceedings Law or on one of the following grounds as determined by such court:
 

 “A.
 
 Violation of tenancy.
 
 The tenant is violating a substantial obligation of his tenancy other than the obligation to surrender possession of such dwelling unit and has failed to cure such violation after written notice by the owner that the violation cease within ten days; or within the three-month period immediately prior to the commencement of the proceeding the tenant has willfully violated such an obligation inflicting serious and substantial jnjury upon the owner”.
 

 [2]
 

 . One ground floor apartment is specifically leased for professional purposes.
 

 [3]
 

 . As to tenant’s reliance upon
 
 Matter of Park East Land Corp. v Finkelstein
 
 (299 NY 70) for the proposition that the landlord
 
 must
 
 demonstrate “actual harm”, we note simply that proof of actual harm or lack thereof was only one of the many factors that was considered by the court in that case.