OPINION OF THE COURT
Doris Ling-Cohan, J.
Before the court is the novel issue of whether an artist can *268 be evicted because he creates art work in his apartment. This holdover proceeding is predicated on petitioner landlord’s (petitioner) claim that respondent tenant (respondent) has breached his lease in that he is occupying the subject apartment as “an artist’s studio and maintaining and operating a nonresidential and commercial use in the apartment”. (See, notice to cure.) Essentially, the petitioner claims that the respondent is occupying the apartment for commercial and nonresidential use and not as a private dwelling by operating a commercial artist’s studio in the apartment.
At the trial, petitioner, represented by counsel, presented the managing agent Warren Switzler as his only witness. Respondent, unrepresented, testified on his own behalf. The following constitutes the findings of fact and conclusions of law.
Petitioner has failed to prove a prima facie case. The renewal lease form admitted into evidence does not contain the provisions of the lease cited to in the notice to cure as allegedly being violated by respondent. Accordingly, the court is unable to determine whether the claim of business use, even if proven true, in fact constitutes a violation of any of the provisions of respondent’s lease.[1]
Even if, arguendo, petitioner proved a prima facie case, after evaluating all of the testimony and documentary evidence, the court finds that the subject apartment was not used for business or commercial use to warrant the eviction of respondent. The court credits the testimony of respondent over the petitioner’s agent. In making this finding, the court was influenced by the fact that the petitioner’s agent’s testimony was elicited primarily through leading questions. Further, the respondent testified consistently and with a sincere demeanor.
The evidence establishes that respondent uses the studio apartment for residential purposes. As an artist, however, he also admitted to creating art in the apartment; Respondent further testified that he maintains a relationship with a neighbor and, therefore, does not sleep in the subject apartment every night. He indicated that he eats in the apartment but rarely cooks there.
Petitioner essentially bases its claim of business use on two “visits” to respondent’s apartment by the testifying agent, each lasting, at most, five minutes. At trial, the agent stated that in his visits he saw art work everywhere. Petitioner’s agent initially maintained that, in his two visits, he did not see any *269 kitchen facilities in the essentially one-room apartment, implying that they were removed because the apartment was being used as a commercial art studio. The court has reviewed the photograph of the kitchen area submitted by respondent. In that photograph a small refrigerator, stove, sink and kitchen cabinets are depicted. In response to the photograph, petitioner argues that the appliances were either hidden behind the art work during the agent’s “visits” or were reinstalled for purposes of the photograph. Petitioner does not offer an explanation for the dirty spice and oil containers on the ledge under the cabinet that are clearly depicted in the photograph. Given the totality of the circumstances, it defies credibility that these fixtures were removed and then replaced prior to the taking of the photograph. It is more likely that petitioner’s agent was mistaken as to what he claims he viewed. By all accounts, his two “visits” to the apartment were of very short duration consisting of a maximum of five minutes each, and he had less than a clear view of the apartment. He conceded that he never entered the apartment past the entrance door, there was a loft bed by the door, and respondent (who is approximately 6 feet and of medium weight) was present at the door during each visit. These factors undoubtedly gave him a semi-obstructed view.
During the course of the trial, respondent also testified that he never gets deliveries or sees any clients at the subject apartment. This was undisputed by petitioner. He testified that he has been living in this studio apartment for approximately 30 years. He claimed that once he is commissioned by a client, he executes the art pieces at his home, using pastels. This is quite different from operating a commercial art studio. Based on respondent’s testimony which the court credits, it is clear that respondent is not running a “business” from his apartment. There are no employees, clients, messengers, or delivery people who visit the apartment. Respondent does not use heavy commercial art equipment to create his art which disturbs the tranquility of his neighbors.
The court has not been able to locate any cases on the issue of whether an artist’s use of a residential apartment to create art work constitutes a business use; nor has either side supplied any applicable cases. However, public policy dictates that artists who create art in their homes are not engaged in a business use of the premises to warrant the extreme sanction of eviction. The work of an artist can be described as something between a “calling” and a “hobby,” difficult to quantify and to *270 confine. Many artists throughout history have used their homes as art studios including Chagall, Picasso, Giacometti, Duchamp[2]
[3]and Georgia O’Keefe.[8] From Beethoven composing symphonies in his rented room to Andy Warhol creating legendary pop art in his New York home/factory/studio, it is a tradition throughout the world. In fact, Van Gogh even made his own bedroom the subject of one of his most famous paintings.[4] In the biography of New York painter Joan Mitchell, it is claimed that she rented a small house, between Blecker and Seventh Avenue, where she lived and painted; later on, she moved to an apartment on Ninth Street in the Village, where she used the living room as a studio.[5] If every New York artist who did art work out of his or her home were able to be evicted, then the next Robert Rauschenberg[6] or Andy Warhol[7] (all New York artists who worked out of their home) may never have the opportunity to evolve and become a success. As stated in the New York Art Scene: “Artists now live and work in the streets of Lower Broadway, on the Upper West Side, the Lower East Side * * * anywhere, in fact, where decent * * * space can be found at reasonable rents.” (Emphasis supplied.)[8]
Art enriches the lives of society’s citizens and should be encouraged rather than stifled. Many of New York’s neighborhoods owe their vibrancy and colorfulness in large part to New York’s artists and the art galleries they spawn. These neighborhoods include the Lower East Side, the Village, Soho, Tribeca, Chelsea and Williamsburg. As expressed by the State Legislature:
“[W]ith increasing leisure time, the practice and enjoyment of the arts are of increasing importance and * * * the general welfare of the people of the state will be promoted by giving further recognition to the arts as a vital aspect of our culture and heritage * * *
“It is hereby declared to be the policy of the state to join with * * * [those] concerned with the arts to insure that the role of the arts in the life of our communities will continue to grow and will play an ever more significant part in the welfare and *271 educational experience of our citizens and in maintaining the paramount position of this state in the nation and in the world as a cultural center.
“It is further declared that all activities undertaken by the state in carrying out this policy shall be directed toward encouraging and assisting rather than in any ways limiting the freedom of artistic expression that is essential for the well-being of the arts.” (Arts and Cultural Affairs Law § 3.01.)
It has long been recognized that protection of artists is in the public’s interest. For example, the Legislature has promulgated laws regarding joint living-working quarters for artists in loft, commercial or manufacturing buildings. (Multiple Dwelling Law §§ 275-278.) In promulgating such laws the Legislature has found that: “There is a public purpose to be served by making accommodations readily available for joint living-work quarters for artists for the following reasons * * * the financial remunerations to be obtained from pursuit of a career in the arts are generally small; that as a result of such limited financial remuneration persons regularly engaged in the arts generally find it financially impossible to maintain quarters for the pursuit of their artistic endeavors separate and apart from their places of residence; that the cultural life of cities * * * within this state and of the state as a whole is enhanced by the residence in such cities of large numbers of persons regularly engaged in the arts; that the high cost of land within such cities makes it particularly difficult for persons regularly engaged in the arts to obtain the use of the amounts of space required for their work as aforesaid” (Multiple Dwelling Law § 275).
It is consistent with this expressed public policy that the court finds the within artist’s use of the subject residential apartment for art work does not constitute a “business” use to warrant his eviction.
Furthermore, under the facts adduced at trial, it is clear to the court that respondent’s use of the subject apartment is for residential rather than business purposes. The test as to whether an apartment is being used for residential purposes is not whether it is being slept in each evening or whether the kitchen appliances are being used on a regular basis, as petitioner argues. If this were the standard, perhaps many New Yorkers might find themselves facing eviction.
Although business use of an apartment can be grounds for eviction, the use must materially affect the character of the building, materially damage or burden the property or materially disturb the other tenants to warrant eviction. (Nissen v *272 Wang, 105 Misc 2d 251 [Civ Ct, NY County 1980].) De minimis violations of substantial lease obligations are insufficient as a ground for eviction. (See, Matter of Park W. Vil. v Lewis, 62 NY2d 431 [1984].) In Park W. Vil. (supra), the leading case on this issue, the Court of Appeals held that the tenant’s conducting of her entire professional psychotherapy practice in the subject apartment constituted a breach of a substantial obligation of her tenancy where the tenant had constructed a floor-to-ceiling partition to provide a separate treatment area and saw approximately 15 to 22 patients per week. This is qualitatively different from the instant case in which there is no evidence that foot traffic in the building was increased by virtue of respondent’s art work and this court’s finding that the respondent had not altered the apartment.
The instant facts are also qualitatively different from those present in Ansonia Assocs. v Bozza (180 Misc 2d 702 [App Term, 1st Dept 1999]) in which the Appellate Term, First Department, held that the scope of the tenant’s extensive professional use of the apartment in which commercial studios were created so that third parties could hire them out for a fee constituted a significant violation of the tenancy. In Ansonia Assocs. (supra), the tenant, a musician, through his corporation, regularly let out for profit four of the six rooms in the apartment (each equipped with a grand piano) to teachers for lessons or individuals to practice six days a week. Approximately 10 to 20 persons a day visited the studios.
Furthermore, a tenant using his apartment to do paper work, send and receive facsimile and telephone calls was held not to have materially affected the character of the building, damage or burden thé landlord’s property, or disturb the other tenants to constitute a “business use”. (Nissen v Wang, 105 Misc 2d 251 [Civ Ct, NY County 1980], supra.) The type of work executed by an artist, for purposes of this analysis, is similar to the work performed by the tenant in Nissen (supra), in that, in both situations, the work could be done within the confines of the apartment without disturbing the other tenants in the building. Also, in both, there was no evidence that there was any unusually heavy pedestrian traffic to and from the apartment in question.
Even in-home family day-care facilities have been viewed as consistent with residential use, in recognition of the expressed New York State policy favoring greater availability of day care and in-home family day-care facilities and their failure to materially affect the character of the premises. (See, 18 NYCRR *273 part 416 et seq.; see, Diament v Isaacs, 24 Misc 2d 1026 [Mun Ct, Kings County I960]; Vittorio Props. v Alprin, 67 Misc 2d 439 [Civ Ct, Bronx County 1971]; Sorkin v Cross, NYLJ, Apr. 24, 1996, at 27, col 3 [Civ Ct, NY County].)
Accordingly, the petition is dismissed.

. The lease is not part of the record.

. Liberman, The Artist in His Studio (Random House, revised ed 1998).

. Leoengard, Georgia O’Keefe at Ghost Ranch: A Photo Essay (Neuses Publ. Co. 1999).

. The Bedroom was painted by Van Gogh in 1889.

. Bernstock, Joan Mitchell, at 21 (Hudson Hill Press 1988).

. Solomon, New York Art Scene (Holt, Rinehart, Winston 1967).

. Hickey, All Tomorrow’s Parties (Frieze, London & D.A.F. 1997).

. See, New York Art Scene, op. cit., at 15, n 7.