**SOUTH PARK ASSOCIATES, L.L.C., Plaintiff,**

v.

**RENZULLI, Defendant.**

No. 99 Civ. 8963 (SHS).

United States District Court, S.D. New York.

April 25, 2000.

Hein J. Hazenberg, New York City, for Plaintiff.

Donald Eng, New York City, for Defendant.

## OPINION & ORDER

STEIN, District Judge.

Plaintiff South Park Associates, L.L.C. has brought this action seeking a declaratory judgment that its tenant, defendant Josephine Renzulli, may be evicted from the apartments where she lives. The parties have each moved for summary judgment. For the reasons set forth below, the landlord's motion is denied and the tenant's motion is granted because plaintiff has not properly terminated the tenancy as required by New York law. That portion of defendant's motion that alleges that subject matter jurisdiction does not exist is denied.

## I. Background

South Park is a Florida limited liability company whose principal place of business is in Florida and none of whose members is a citizen of New York. South Park owns the shares and proprietary lease for the cooperative apartments 11/12B & 12C at 230 Central Park South in New York City. Renzulli, currently 84 years old, has been residing in those apartments for more than 30 years and currently rents them from South Park. The apartments are subject to the New York City Rent Stabilization Law of 1969. Plaintiff's lawsuit seeks, among other matters, declaratory judgment that it may evict Renzulli and that the apartments are rent destabilized. In other words, the landlord believes the apartments are eligible to be rented at a "reasonable market rent," rather than the below market rent Renzulli currently pays pursuant to the Rent Stabilization Law.

In 1983, the building was converted to cooperative ownership under a non-eviction plan. Renzulli chose to remain as a rent stabilized tenant after the conversion of the apartments. This litigation is the latest in a series of lawsuits by her landlords against Renzulli seeking her eviction. Each suit prior to this one was dismissed by the courts. Renewal leases—each of which set the commencement date and the rent due date at the first of the month— were periodically sent to Renzulli, who signed and returned each of them. The last such lease expired in 1995. At that time, the landlord brought an eviction action instead of offering renewal leases. For several years—until the landlord's latest loss in court in 1999—Renzulli was not offered renewal leases.

In May of 1999, the landlord sent Renzulli renewal leases; those leases changed the rent due dates and commencement dates to the 15th of the month. When Renzulli signed and returned them, she made two alterations to their terms. First, she changed the commencement and rent due dates to the beginning of the month—the same terms used in the earlier leases. Second, she eliminated three of the four charges related to air-conditioner use, claiming that she was being charged for four air-conditioners even though she had only one. The previous lease had contained the same four air-conditioner charges, but Renzulli claims that she did not know the charges covered four air conditioners. *See* Hazenberg Aff., Ex. E; Renzulli Aff., at ¶ 8.

South Park refused to execute the altered renewal leases and instead, on Au-

gust 6, 1999, served Renzulli with a termination notice that stated "You have elected not to renew your lease, as offered by your landlord, which will expire on September 30, 1999." Renzulli Aff., Ex. G. Renzulli nonetheless sent a rent check for October and South Park accepted it. *See* Renzulli Aff., Exs. I & J.

As noted above, the parties have now each moved for summary judgment.

## II. Discussion

### A. Subject Matter Jurisdiction

Federal district courts have original jurisdiction over civil matters where the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties. *See* 28 U.S.C. § 1332(a).

There is no dispute that complete diversity of citizenship exists in the present case. However, the tenant alleges that the $75,000 amount in controversy requirement has not been met, and the landlord responds that the apartment has a fair market value in excess of $1,000,000. *See* Rosefielde Aff. at ¶ 3.

■ Where a defendant disputes the existence of diversity jurisdiction based upon the amount in controversy, "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Tongkook America, Inc. v. Shipton Sportswear Co.,* 14 F.3d 781, 784 (2d Cir.1994) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938)). "The party asserting diversity jurisdiction in federal court has the burden of establishing the existence of the amount in controversy," *Lupo v. Human Affairs Int'l, Inc.,* 28 F.3d 269, 273 (2d Cir.1994); however, the burden is only to show a "reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Tongkook,* 14 F.3d at 784.

Plaintiff alleges that the value of the apartment if vacant or rent destabilized would exceed $75,000. *See* Complaint, at ¶ 3. Renzulli does not deny this allegation,

but rather contends that the amount in controversy requirement is not met because plaintiff is not seeking damages over $75,000, or alternatively, that plaintiff has no proof to support the allegation that the increase in value would exceed $75,000.

■ A plaintiff need not seek monetary damages in order to meet the jurisdictional requirement. The value of property free from rent regulation can constitute the amount in controversy. *See Eisen v. Eastman,* 421 F.2d 560, 566–67 (2d Cir. 1969) (citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 181, 56 S.Ct. 780, 80 L.Ed. 1135 (1936) and *Kroger Grocery & Baking Co. v. Lutz,* 299 U.S. 300, 301, 57 S.Ct. 215, 81 L.Ed. 251 (1936)). In *Eisen,* a landlord sued the New York City Rent and Rehabilitation director, challenging the director's decision to reduce the maximum rents chargeable. Defendant moved for dismissal on several grounds, one of which was failure to meet the amount in controversy requirement. The Second Circuit wrote that "the complaint can be considered to put into controversy the value of the two buildings free from rent control as against being bound by it, or at least their value before and after the rent reduction order." 421 F.2d at 566. By alleging that the value of the apartments at issue free from rent control would exceed $75,000, South Park satisfies the jurisdictional amount requirement.

■ That is not the end of the matter, however, for "where, as here, jurisdictional facts are challenged, the party asserting jurisdiction must support those facts with 'competent proof' and 'justify [its] allegations by a preponderance of evidence.'" *United Food & Commercial Workers Union, Local 919 v. CenterMark Properties,* 30 F.3d 298, 306 (2d Cir.1994) (citing *McNutt,* 298 U.S. at 189, 56 S.Ct. 780). South Park has submitted the affidavit of Alan Rosefielde, the manager of South Park, who writes that "the fair market rental of apartment 11/12B, & 12C, if it were destabilized, would be in excess of $10,000.00 per month," and that "the fair

market value of apartment 11/12B, & 12C without Ms. Renzulli as a tenant is in excess of $1,000,000.00." Rosefielde Aff., at ¶¶ 2–3. Defendant objects to the sufficiency of proof, but does not actually challenge the validity of these figures. Although Rosefielde did not detail how he arrived at the $1,000,000 figure, it cannot be said "to a legal certainty," *Tongkook*, 14 F.3d at 784, that the apartments would not, if free from rent control, sell for more than $75,000 in New York City's real estate market.[1] Accordingly, that part of defendant's motion seeking summary judgment on the grounds of lack of subject matter jurisdiction is therefore denied.

## B. Termination of the Tenancy.

This Court now turns to the merits of the motions. Summary judgment may be granted "only when the moving party demonstrates that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir.1995) (quoting Fed.R.Civ.P. 56(c)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The district court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and may grant summary judgment only when 'no reasonable trier of fact could find in favor of the nonmoving party.'" *Allen*, 64 F.3d at 79 (citations omitted) (quoting *Lund's, Inc. v. Chemical Bank*, 870 F.2d 840, 844 (2d Cir.1989)).

## 1. Plaintiff's termination letter was inadequate.

■ Pursuant to New York law, a landlord's termination notice must state the legal ground upon which it relies, "the facts necessary to establish the existence of that ground," and the eviction date. *See* 9 N.Y.C.R.R. § 2524.2(b). Failure to provide an adequate termination notice bars eviction proceedings. *See* 9 N.Y.C.R.R. § 2524.2(a). "A termination notice is in-

sufficient to serve as a predicate for an eviction proceeding [where it] 'merely recite[s] the legal ground for the eviction, but fail[s] to set forth any of the facts upon which the ensuing ... proceeding would be based.'" *Berkeley Associates Co. v. Camlakides*, 173 A.D.2d 193, 194, 569 N.Y.S.2d 629 (1st Dept.1991) (quoting *First Sterling Corp. v. Zurkowski*, 142 Misc.2d 978, 542 N.Y.S.2d 899 (1989)); *see Bellstell 140 East 56th Street v. Layton*, 180 Misc.2d 25, 687 N.Y.S.2d 536 (1999).

In *Berkeley*, the First Department held that simply stating "you do not occupy the Premises as your primary residence" was not a statement of facts supporting the grounds for nonrenewal. Examples in *Berkeley* of the kind of facts that do satisfy the requirements of Rent Stabilization Code § 2524(b) included: "the fact that the tenants had a vehicle registered in Ridge, New York, the fact that the building staff and management had not seen the tenants using or occupying their apartment for an extended amount of time, the fact that the tenants own property in Florida, the fact that one of the tenants lists Palm Beach as the legal address on her New York State Driver's License."

■ South Park's termination notice offered as the legal grounds for eviction the statement that "You have elected not to renew your lease, as offered by your landlord, which will expire on September 30, 1999." Renzulli Aff., Ex. H. Although this is a valid ground for an eviction pursuant to the Rent Stabilization Code, 9 N.Y.C.R.R. § 2524.3(f), the notification did not state any facts necessary to establish the validity of this claim, such as the date on which the renewal lease was sent and whether the tenant signed and returned it.

Accordingly, South Park's failure to state the factual basis for the termination in the termination notice bars eviction proceedings.

---

1. Indeed, most sentient observers of life in New York City would find it hard to conceive of an apartment bordering Central Park in midtown Manhattan that would not sell for many multiples of $75,000.

### 2. Plaintiff's stated reason for termination was inadequate.

Moreover, the stated grounds for this termination were inadequate. Pursuant to New York law, a landlord may not evict a tenant of a rent controlled apartment except for cause, the grounds for which are enumerated at 9 N.Y.C.R.R. § 2524.3. Those grounds include a tenant's refusal to renew an expiring lease. *See* 9 N.Y.C.R.R. § 2524.3(f).

A renewal lease must, however, contain "the same terms and conditions as the expiring lease." *See* 9 N.Y.C.R.R. § 2523.5(a). If this condition is not satisfied, the tenant's refusal to sign the renewal lease does not provide cause for the landlord to evict. *See* 9 N.Y.C.R.R. § 2424.3(f); *see also Goldberg v. Goris,* New York Law Journal, Nov. 19, 1986, at 7, 14 Housing Court Reporter 364A (N.Y.Civ.Ct., N.Y.Co.); *945 St. Nicholas Tenants League v. Agarwal,* New York Law Journal, January 16, 1991, at 22, 19 Housing Court Reporter 22A (N.Y.Civ.Ct., N.Y.Co.); *255 Eastern Pkwy Assocs. v. Lumpkin,* New York Law Journal, October 26, 1994, at 32, 22 Housing Court Reporter 615A (N.Y. Civ.Ct., Kings Co.).

■ South Park failed to comply with the requirements of section 2523.5(a) when it altered the commencement and rent due dates. Renzulli objected to this change of the terms and conditions, saying that it would cause "confusion," possibly leading to late payments or double payments. Renzulli has been paying rent due on the 1st of the month for over thirty years. *See* Renzulli Aff., at ¶ 9. South Park asserts that it chose a date in the 120–150 day window in which a new lease term can commence pursuant to the terms of the official, mandatory, Lease Renewal Form (RTP–8). *See* Plaintiff's Memorandum in Further Support, at 4. The first day of the month would have also satisfied this requirement. Regardless of the likelihood of such a change actually causing any "confusion," or whether the new dates are within the terms of the official Lease Renewal Form, the fact is that the renewal lease did not contain "the same terms and conditions as the expiring lease."

### 3. Plaintiff Vitiated Any Termination Notice.

■ Even if South Park's grounds for and notice of termination were legally adequate, its subsequent decision to accept rent for October waived any prior termination. Pursuant to New York law, a landlord's acceptance of rent after the expiration of a tenancy waives the termination notice. *See, e.g., Roxborough Apartment Corp. v. Becker,* 176 Misc.2d 503, 673 N.Y.S.2d 814 (1998); *Manocherian v. Williams,* 118 Misc.2d 212, 459 N.Y.S.2d 1010 (1983); *Atkinson v. Trehan,* 70 Misc.2d 614, 334 N.Y.S.2d 293 (1972); *BG Smith Real Estate v. Byrne,* 3 Misc.2d 559, 112 N.Y.S.2d 893 (App. Term 1st Dept.1952); *Baginski v. Lysiak,* 154 Misc.2d 275, 594 N.Y.S.2d 99 (1992).

Renzulli sent, and South Park accepted, rent checks for two months after the termination notice. *See* Renzulli Aff., at ¶ 5, Ex. I & J. The first check covered the last month of her old lease up to the date of the purported termination, September 30, 1999. It was the acceptance of the check covering the rent for October after the tenancy was purportedly terminated that constituted a waiver of the termination notice. South Park never returned the check nor alleged that its acceptance was inadvertent. Acceptance of rent for a period subsequent to the expiration of the lease is "inconsistent with an intention to evict the tenant" and constitutes a waiver of any termination notice. *Manocherian,* 118 Misc.2d at 215, 459 N.Y.S.2d 1010.

### III. Conclusion

For the reasons set forth above, this court has subject matter jurisdiction over this action. Because plaintiff failed to give adequate notice of termination to Renzulli, failed to offer legally sufficient grounds for termination, and waived any termination by accepting subsequent rent payments,

defendant's motion for summary judgment is granted and the complaint is dismissed. SO ORDERED.