OPINION OF THE COURT
John H. Stanley, J.
This is a holdover proceeding alleging that respondent breached a substantial obligation of the lease or caused a nuisance by the cooking and packaging of lunches in the kitchen of the premises to be sold outside the premises.
Jennifer Almonte testified on behalf of petitioner. Ms. Al-monte manages the building and is employed by Choice New York Management. Ms. Almonte stated that petitioner purchased the building in 2014. At the time of purchase, the prior owner did not provide leases to petitioner. The premises are rent stabilized and the monthly rent is $670. Shortly after purchase of the building, petitioner commenced this proceeding. Ms. Almonte testified that the proceeding resulted from information she received from a contractor who observed Ms. Perez carrying large quantities of food out of the apartment. Petitioner retained the services of Thornton Tomasetti, an architectural and engineering firm, to determine whether the premises were being used for commercial purposes or whether the conduct posed a hazard. A representative of Thornton To-masetti arranged access with Ms. Perez and an architect inspected the premises. Based on the report of Thornton To-masetti, the petitioner concluded that there was an illegal use of the kitchen which was potentially hazardous to other tenants as well as to the integrity of the building. Ms. Almonte *696 stated that the activity did not cease after service of the notice to cure and the case was commenced by service of the petition.
Petitioner called respondent Jeanette Perez to the stand for its case-in-chief. Ms. Perez testified that she has lived in the premises for the past 24 years. She lives with her husband, her three children and her two parents. Her occupation consists of the preparation and cooking of Ecuadorian food in the kitchen of the apartment and then selling it at construction sites Monday through Saturday. Ms. Perez has a food vendor’s license. Ms. Perez sells on average 12 to 15 lunches a day. The ingredients in the lunches vary daily but consist primarily of such things as arroz con polio, chicken soup, fish with rice and stewed meat. Ms. Perez prepares fried fish about once a week. When she needs to dispose of grease, she does so by allowing it to congeal and then places it in a plastic bag and places the bag in the garbage. About six months ago, Ms. Perez purchased a fire extinguisher in case of fire. The average length of time for food preparation is two hours. For ventilation, Ms. Perez opens the apartment windows. The kitchen is not equipped with water sprinklers and the sink does not contain a grease trap. On cross-examination, Ms. Perez stated that she learned to cook from her mother and started cooking as an occupation about 16 years ago. She began selling food so that she could support her family after her job in a sweater making factory ended when the factory closed. Ms. Perez said that the amount that she cooks has lessened over the years because she has had increasing problems with her legs. Ms. Perez stated that the two younger children ages 11 and 12 years were adopted from their Ecuadorian father after their mother had died and the father returned to Ecuador. Ms. Perez’s parents are ages 78 and 74. The only other income comes from her son Eric, age 21, who works during the day and attends school at night. Ms. Perez states that she cleans the oven daily with Easy-Off and spends approximately 20 minutes daily cleaning after food preparation. Ms. Perez testified that she had received the permission of the prior landlord to cook in the premises but that the building was sold about four years ago. Ms. Perez states that there was never a fire or other serious condition in the kitchen during the 16 years of food preparation.
Stephanie Nussbaum, a registered architect employed by Thornton Tomasetti, testified on behalf of petitioner as an expert witness. Ms. Nussbaum recounted her observations and conclusions based on her inspection of the premises on April *697 29, 2015. Ms. Nussbaum stated that the subject building consists of three stories and is a wooden frame structure built with masonry bearing walls. When she entered the building, Ms. Nussbaum immediately noticed the smell of cooking food in this residential premises and a rather warm lobby on a slightly chilly day. The kitchen of the premises contained exactly what would be expected in a kitchen preparing 12 to 15 lunches to be transported to construction site workers. There were two very large transportable coolers with packaged takeout containers containing food along with very large pots and pans and several stacks of empty takeout containers. Ms. Nussbaum did not observe any mechanical ventilation systems or grease disposal equipment. She did observe a smoke detector and carbon monoxide detector. Ms. Nussbaum believed that the absence of a fire suppression system violated New York City Building Code (Administrative Code of City of NY, tit 28, ch 7) § BC 904.2. Ms. Nussbaum testified that the building was located in an R6 residential zoning district with a Cl-3 commercial overlay which means that the permitted commercial usage is limited to the first floor of the building and could support small business establishments such as a dry cleaner. Ms. Nussbaum stated that a home occupation is allowed within an R6 zoned district but that there are six restrictions to such use. These restrictions are that there cannot be excessive noise, vibration, smoke, dust, odors, heat, humidity or other objectionable effects. Ms. Nussbaum stated that this list is for illustrative purposes. Ms. Nussbaum believes that the use of this kitchen with intent to sell by Ms. Perez is the very definition of a commercial kitchen and that such use violates the permissible use in an R6 zoned district. Ms. Nussbaum stated that the zoning resolutions define a commercial kitchen as any kitchen used with the intent to sell and make no distinction as to the quantity of food sold. Ms. Nussbaum stated that the failure to install an exhaust hood over the stove increases the likelihood of a fire spreading and violates the mechanical code which requires a commercial kitchen to install a type 1 exhaust hood. A commercial kitchen is required to install such a hood regardless of the amount of food cooked. Ms. Nussbaum expressed a concern about the absence of a grease trap which is mandated for commercial kitchens under New York City Plumbing Code (Administrative Code of City of NY, tit 28, ch 6) §§ PC 1003.1 to PC 1003.3.5. The absence of a grease trap could cause a backup into other residents’ apartments. Ms. *698 Nussbaum stated that the fact that there is a commercial kitchen on the second floor of the building violated New York City Zoning Resolution § 32-421 which requires such a kitchen to be on the first floor when existent in an R6 residential district with a Cl-3 commercial overlay.
David Crespo, the former owner of the premises, testified on behalf of petitioner. Mr. Crespo stated that he gave permission to Ms. Perez to cook in the premises and sell the lunches outside the premises. Mr. Crespo consented without investigating the legality of the matter and he did not inform the buyer of the agreement with Ms. Perez. There was nothing in the deed allowing for the operation of a commercial kitchen in the subject apartment.
Discussion
In pretrial motion practice the court struck petitioner’s claim pursuant to Rent Stabilization Code (RSC) (9 NYCRR) § 2524.3 (c) that the tenant’s food preparation in the premises for sale outside the premises constituted an illegal use of the premises. The court barred this ground for termination as a matter of law due to the lack of an underlying violation. The remaining two grounds for termination are that respondent violated a substantial obligation of the lease under RSC (9 NYCRR) § 2524.3 (a) or that the alleged activity constitutes a nuisance under RSC (9 NYCRR) § 2524.3 (b).
Generally, in order for a business use of the premises to substantially violate the lease, the business use must materially affect the character of the building, materially damage or burden the property or materially disturb other tenants. (Matter of Park W. Vil. v Lewis, 62 NY2d 431 [1984].) The petition and predicate notices do not cite the paragraph of the lease respondent substantially violated. The notice to cure states that respondent daily prepares large quantities of food packaged in takeout containers to sell outside the premises. The notice makes reference to oversized pots and pans, large quantities of takeout containers and two large coolers found in the kitchen. The notice also states that respondent failed to install proper life and safety equipment such as a grease trap and a mechanical exhaust system. The credible testimony and documentary evidence failed to establish that Ms. Perez violated a substantial obligation of the lease. Respondent prepares 12 to 15 meals a day, six days a week. This is not a large business enterprise but rather an example of an enterprising immigrant mother *699 helping to support her family by preparing home cooked meals for workers at construction sites. There was no evidence of tenant complaints. There is no showing of such things as increased traffic to the premises or a rodent or cockroach infestation, fires, floods or any other negative consequence that has resulted from respondent’s cooking which has lasted for the past 16 years. It is possible that the volume of meals prepared in a residential premises could trigger the requirements for a commercial kitchen. The facts here do not support such a conclusion.
A “nuisance,” for purposes of the Rent Stabilization Code, is a “condition that threatens the comfort and safety of others in the building” and “key to the definition is a pattern of continuity or recurrence of objectionable conduct” (Frank v Park Summit Realty Corp., 175 AD2d 33, 35 [1991], mod on other grounds 79 NY2d 789 [1991]). Not every annoyance or interference constitutes a nuisance. (2 Robert F. Dolan, Rasch’s Landlord and Tenant—Summary Proceedings § 30:60 at 465 [4th ed 1998].) A nuisance must “interfere with a person’s interest in the use and enjoyment of land,” including “the pleasure and comfort derived from the occupancy of land and the freedom from annoyance.” (Domen Holding Co. v Aranovich, 1 NY3d 117, 123-124 [2003].) Moreover, any threat from a nuisance must be real and imminent. (See Lexington Partners, LLC v Pelter, 5 Misc 3d 126[A], 2004 NY Slip Op 51151[U] [App Term, 1st Dept 2004].) Here, there is no evidence of damage to property or imminent danger of such damage. Petitioner’s expert witness opined that the mere fact that food was prepared in the household with intent to sell rendered the kitchen a commercial kitchen. However, there are no violations placed on the premises for failure to install life and safety equipment required in commercial kitchens. In addition, the testimony did not establish an imminent threat to the landlord or other occupants of the building. This is a long term tenancy of 24 years in which Ms. Perez has prepared meals for sale outside the premises for 16 of those years. The fact that the business has operated for all these years without complaint or other incident from the former landlord or from other tenants demonstrates that the behavior does not rise to the level of establishing a nuisance that poses an imminent threat to the landlord or other tenants.
Accordingly, the petition is dismissed with prejudice.